---

## GOLDMARK and others *v.* KREELING and another.

*(Circuit Court, D. California.  October 23, 1885.)*

1. INJUNCTION—UNAUTHORIZED PRESENTATION OF UNCOPYRIGHTED OPERA.
    The owner of an opera that has not been copyrighted may obtain an injunction, on giving proper security, to prevent its presentation by an unauthorized party.
2. SAME—SUFFICIENCY OF BOND.
    Where the defendants' counsel were not present when the bond on which a preliminary injunction issued was accepted by the court, on proof that such

bond is insufficient, the court may, after proper notice to the parties, require additional security to be given as a condition of continuing the injunction.

3. SAME — EFFECT OF FAILURE TO GIVE BOND — OFFER TO MAKE DEPOSIT OF CHECK OR MONEY AS SECURITY.

When the owner of an uncopyrighted opera files a bill to restrain the unauthorized presentation thereof, and an order to show cause why the injunction should not issue is made, and no cause to the contrary having been shown, an injunction is granted on condition that a bond for $10,000 be given, and the bond offered is not accepted by the court, and the injunction dissolved, on defendants executing an indemnity bond, a motion to set aside the order dissolving the injunction may be granted, when complainant offers to deposit in court as security a certified check for the amount of the required bond, or that amount in coin.

This is a suit in equity to enjoin the production of an opera of which complainants claim to be the proprietors,—a suit resting upon the common-law right of the author, not on a copyright. The sureties offered on a bond required to be given by a prescribed day upon the granting of an injunction, after several hearings, having failed to justify to the satisfaction of the district judge of Nevada, before whom the proceeding was pending, he dissolved the injunction upon that ground, upon defendants' giving a satisfactory bond, in the sum of $10,000, to pay such sum to complainants as should be recovered in the suit. The complainants, on affidavits showing their good faith, and excusing their failure to present sufficient sureties at the proper time, promptly moved, before respondents' bond had been approved, to vacate the order dissolving the injunction, upon the indemnifying bond given by the defendants, and to restore the injunction before granted; and they offered to deposit a certified check upon some solvent bank for the required amount, or to deposit the coin in court in lieu of a bond. The application was denied; but, the point being new, and not being entirely satisfied with this action, the judge who heard the application granted a rehearing, and, upon such rehearing, invited the circuit judge and the district judge for the district of California to sit with him. After argument on the hearing, the following oral decisions were rendered.

*Jos. D. Redding*, for complainants.

*H. H. Lowenthal* and *W. W. Cope*, for respondents.

Before SAWYER, SABIN, and HOFFMAN, JJ.

SABIN, J. I do not deem it necessary to review at length the history of this case, as it is certainly very well understood by counsel, and probably by the bar who have been in attendance. We deem the case a very important one. I believe it is the first case of the kind that has ever been brought in this court. While innumerable cases have been brought on copyrights and patents, etc., I believe this is the first case brought in this court, or, possibly, upon this coast, wherein a complainant has sought to restrain a defendant from producing a play, or any matter of this kind, not upon copyright, but upon common-law right. I have been inclined to look at this case very much from the standard of cases that are brought upon patents and upon copyrights. I am inclined to think

there is a distinction in the cases, and nearly all the cases cited to the court during the argument on this matter have been cases upon copyrights or patents. There have been, perhaps, three or four cases cited to the court very similar to this, where parties have sought to enforce their common-law rights. They are different, however, from this case, in this: In those cases it was upon motion and argument before the court whether or not an injunction should issue, and not, as in this case, where no argument has been made before the court, as to whether or not an injunction should issue. It was conceded in this case, virtually, at least, that it was a proper case for an injunction to issue. No opposition, as I understand, has ever been offered to its issue. There has been no contest on the sufficiency of the bill in this case; therefore, the injunction issued regularly thereupon. The only question really before the court, as I observed yesterday, is, was the order made by myself on the sixteenth of this month, dissolving the injunction upon the defendants' giving security, under all the circumstances of the case, a complete and full indemnity to the complainants in this case?

I do not care to review at all my action in regard to the sureties in this matter. I merely desire to say now that the bonds tendered in this matter, thus far, are not satisfactory to me; nor am I at all satisfied with the manner in which the matter was conducted. I think bonds could very easily have been procured by complainants. It was only a small amount,—$10,000,—and I have merely to observe now that I do not think the security thus far offered in the case by complainants was such as the court ought to have accepted. I think that my action in that respect was entirely correct. Of course, when a bond is given, it is given in good faith, and for indemnity to the parties who may suffer injury in the action, if the complainant should not succeed in his case. Without any further remark on that, I have merely to say that I do not think the bond afforded the security that it was the duty of the court to enforce in a case of this kind. But I am not wholly satisfied that the indemnity afforded by the order of the court, that the respondents give a bond of $10,000, is a full and adequate remedy for the complainants in this case.

As I observed, this case is different from a suit brought to restrain an infringement of a patent, or of a copyright, and there is great force in the point urged, that if any parties are permitted, in violation of complainants' rights, to produce this play, it may, and possibly would, cause irreparable damage to the complainants, if they are the lawful owners of this opera of "Nanon," and they only have the right to produce it. As the matter now stands on the bill, unquestionably they are the lawful and exclusive owners, and have the exclusive right to produce it. There is also, to my mind, great force in the suggestion that the owner, as in this case, of a play or opera, or other property not protected by patent or a copyright, is entitled to select his licensee. One party might produce this individual opera, and, perhaps, the

complainant might suffer no very great damage. It might be an advantage in the way of an advertisement, or otherwise. Another party might produce it, and it might be of the very highest detriment to the complainant, and absolutely ruin its production elsewhere. As to who shall produce it, even if, as in this case, the parties owning it do not produce it, but merely license other parties to produce it, they have the most indubitable right to say who those parties shall be. I am inclined to think that, perhaps, I gave too much weight to the idea that in the giving of indemnity by these respondents they were giving ample security to the complainants. If I was in error in that, of course the order should be corrected.

We have given this case unusual attention. I have invited Judges SAWYER and HOFFMAN to sit with me. I have desired to be guided by their very large and varied experience in matters of this kind, for my own experience has been somewhat limited, and this is the second argument I have ordered on this matter. We have given it very careful and anxious consideration, not only to be right as to these complainants, but to be right as to any and all parties,—to establish the true and correct rule. I am inclined, then, as I say, to think that perhaps in the order made by me on the 16th I may have overestimated the security I was giving to the complainants in this case; that perhaps I should have given them still further time to have procured sufficient bondsmen. It is true, parties offered on that day, about the time the court was announcing its opinion, to furnish a certified check in the sum of $10,000. It was either offered at that time, or to be ready by 2 o'clock. I declined that, at the time, for the simple reason that I thought sufficient time had been afforded them, and that the security which I would require the respondents to give would be ample indemnity to complainants. I now think, under the authorities, and under what may occur in this or any like case, that that indemnity is not full and ample. I am inclined to the opinion that nothing but an injunction in the first instance will reach the case.

A motion can always be heard either on the coming in of the answer, or a motion can be heard at any time to dissolve the injunction on affidavits. Of course no steps of that kind have been taken in this case. It stands merely on the bill as presented, without objection made to the bill.

*Mr. Cope.* We could not have done that without waiving our objection to the bond.

*Judge Sabin.* I do not think that would have obtained in this court. In any event, the court, in justification of itself, would have required good security to be given. I would have given you an order to show cause on these sureties at any time. This might often happen. You might give a bond which would be ample to-day, and three months hence a surety might die, and an order to show cause would be granted why you should not produce further security. An offer was made the other day by complainants in this case to deposit gold coin in court,

if the court should order it, or a certified check. If the money should be paid into court it would have to be paid into the treasury, and it is considerable trouble to pay it in and get it out. A check, therefore, is more satisfactory. I think, therefore, the order, as made the other day, should be vacated, or at least modified, and the order of the court will be that the order made on the 16th, dissolving the injunction, be vacated; that the injunction heretofore issued be continued, upon the complainants' depositing with the clerk to-day, by 3 o'clock, a certified check payable to the order of the clerk in his official capacity, as clerk of the court, in the sum of $10,000, upon some solvent bank in this city. Leave will be granted to the complainants at any time, upon notice, to withdraw the check, upon giving good and ample security in place of it. Notice of the application and the names of the sureties intended to be offered must be given. I do not want any question to arise again as to the examination of sureties, and their sufficiency.

SAWYER, J., (*concurring*.) I have considered this matter very carefully, and have come to the same conclusion as my associate. There was an order to show cause, with a preliminary restraining order, granted. The parties appeared in response to that order, and upon the hearing an injunction was granted by the district judge of the district, till the further order of the court, with leave to the parties to move to dissolve it. The parties did not see fit, or were not prepared, to present any matters outside of the bill. The injunction was continued upon condition that by a specified day a bond should be given in the sum of $10,000, to be approved by the clerk. A question arose upon the sufficiency of the proposed securities upon that bond. The clerk was about to pass upon the bond when an application was made to the court, and granted, to transfer the question of approval to the court, and the matter was considered by my associate, the district judge of Nevada, then holding the court during my absence in Oregon. He did not assume to review the prior action of the court as to the injunction granted,—either the proceedings of the circuit judge in granting the preliminary restraining order, or of the district judge of this district in granting the injunction on the hearing of the order to show cause. The only question was as to the sufficiency of that bond,—whether the parties had conformed to the conditions of the order granting the injunction. As the matter stands, the injunction granted rests solely upon the bill, and we are satisfied that the bill presents a sufficient ground for the injunction. There was some delay, and the impression upon the mind of my associate was that the parties were not acting in good faith. One surety who had been rejected once was offered again. I am, perhaps, partly responsible for the decision of my associate upon the point under consideration. On my return I found that he had had several hearings upon the justification of the sureties,—indulgence having been given from time to time,—and from what had taken place before, he

was apprehensive that on Friday, the day fixed for the next hearing, there might still be further delay. Expressing his apprehension to me, we consulted, and I was of the opinion then that in case there should be further delays, and especially if there should be indications of trifling, the defendants were entitled to have the injunction dissolved, on their giving proper indemnity to complainants. But I had not fully considered the case. It presented questions entirely new to me, and my suggestions, upon imperfect knowledge of the facts, may have influenced my associate in making the order in question. If so, I am willing to take my share of the responsibility. When the examination came on it turned out that the surety was again rejected, and when the judge was about to announce his decision,—indeed, not till he was in the act of announcing it,—an offer was make to deposit the money; but the offer was regarded at the moment as coming too late, and the order complained of made. The only question is whether that offer ought, under the circumstances, to have been accepted. There had been some provocation. The court was impressed with the idea, doubtless, that it was being trifled with. On the application to modify that order, I think the parties have satisfactorily shown by affidavits that they acted in good faith. They, perhaps, ought not to have offered a rejected surety again. I think they were at fault in that. Still, I am not only satisfied that the solicitor for the complainants, whom I have known for years, was acting in entire good faith, but I believe him to be incapable of acting otherwise. I think, under the circumstances, also, that the complainant Goldmark, a stranger just arrived from New York, his financial condition being unknown here, and he being in these particulars in an embarrassing position, was acting in good faith. That being so, upon a review of this matter as it now appears to me, I am satisfied that further opportunity should have been given complainants on that occasion to perfect their security, even though the money was not tendered till after the judge had commenced to announce his decision.

With reference to the indemnity which was given by the respondents, although the amount was sufficient and the bond good, it, in my judgment, affords no adequate remedy, if any remedy at all. This case differs from a patent case. Take, for instance, a patent for a sewing-machine. A party may in good faith think that a machine of a certain construction, different in form but in reality the same in principle as the one patented, is not an infringement. There is generally in the case of patented articles a royalty established, upon the payment of which any man is allowed to make or use the patented machine or article. A large manufactory may be erected, and the manufacture of sewing-machines or other patented articles be commenced, and it may turn out that there is an infringement on a patent, although the point, at the hearing of the application for an injunction, may appear doubtful. To stop that work pending the suit would be to ruin the manufacturer, even if he turns out to be in

the right; whereas all that the patentee wants, or can obtain in case he succeeds, is his damages, and a remuneration according to the amount which he has fixed as his royalty. Providing he can get that, the more machines there are manufactured and sold the better it is for him. In such cases, in matters of doubt, whether the machine is an infringement or not, whether the patent is valid or not, or whether it has been anticipated or not, where the complainant can be fully indemnified if he succeeds, and where the defendant would be ruined by an injunction if the complainant fails to sustain his suit, courts, in view of the great disproportion of the hardship that may result to the respective parties, have very often declined to grant or continue an injunction on the infringing party's amply indemnifying the patentee. An adequate indemnity is given where the patentee's royalty, profits, and damages are perfectly secured. In these classes of cases there is usually some tangible, appreciable, fixed, and ascertainable measure of the amount to be recovered.

Besides, in a patent case, by the express terms of the statute a patentee in a suit in equity to enjoin an infringer can not only recover the profits or royalty, but also any damages he may sustain in addition to the profits. It often happens that the profits of an infringer in a patent case are greatly less than the damages sustained by the patentee by the infringement; because the patentee is entitled to fix his royalty, and to fix the price for which he will sell his invention, and that must be sufficient to give him his established compensation for his invention, in addition to the cost and profits of manufacturing. Take a sewing-machine, and suppose the royalty is fixed at $50 over and above the profits of the manufacture,—and I think some are higher,—the infringer may manufacture and sell at such low prices as to give him a bare profit on his investment and the manufacture, so that the profits might be just enough to compensate for his investment and labor, leaving nothing for the royalty. The patentee, however, in addition, is entitled to recover his royalty. The profit which the infringer may make at the price he sells would often afford no compensation to the patentee for his invention. He would be remediless if that were his only right. The act of congress itself provides that the patentee may not only recover the profits, but also his damages, in the same suit, in addition to the profits. Not only that, but the court is authorized to treble the damages, in order that the patentee may be completely and thoroughly indemnified against the acts of the infringing party. That is all by virtue of the statute. Otherwise, if the patentee wanted damages, he would have to proceed by his action at law. The statute authorizes him to demand both of these remedies in the same suit, and then authorizes the court to treble the damages. I myself have had occasion to impose the penalty, where the infringement had been a gross and willful violation of the patentee's right, and where the infringement had been continued by the same party after one or more recoveries. So, in a copyright

case, the only compensation for the party owning the copyright is the amount he charges for his copyright fees. He fixes his copyright fee. If this were a case of copyright there would be a distinct, definite, appreciable, fixed, ascertainable measure of damages, which would be the copyright fee; and, no matter who infringed the copyright, when the infringer has paid that fee he has paid the full amount the party himself is entitled to receive, and the more there are sold the better he will be off, provided his fee is perfectly secure. His right exists under the statute. Under the statute both the profits and the damages might be recovered in the same suit. An indemnity in doubtful cases, secured for the infringement during the litigation, would afford an ample remedy.

But this case is wholly outside of any statute. It rests simply upon the common law. A party has either his action at law for his damages, or his bill in equity to restrain the defendant, and recover such profits as he can obtain. The only measure of his compensation in a suit in equity would be the profits received by the wrong-doer. That is all that would be recovered in this case. The bond given by the defendants, in fact, only provides for the payment of such profits as may be recovered by the violation of complainant's rights in this case. What is the measure of the compensation in this case? There is no definite measure. The profits are merely conjectural. There may be no profits. The parties who infringe the complainants' right may put their prices at such figures that there could be no profits. The injured party must go to the wrong-doer to ascertain what their profits are. The expenses and the prices of the representation are under their control; and the performance may only be ancillary to some other business upon which they rely for their principal profits. It will be safe to say that the profits recovered are likely to be very limited.

Prior to the filing of this bill there were two performances. The bill simply asks for an accounting of the profits down to that date. There were two performances that would be covered, unless the bill is amended or the complainants are otherwise entitled to the profits down to the accounting, and the profits that can be proved are certain to be very small. There is no knowing how long the infringement may go on before the final decree, or under what circumstances. The interest of defendants will be to delay a final hearing as long as possible. The opera may be performed under such circumstances as to render its performance by the owner futile. The owner is entitled to select his licensee, and to determine the conditions upon which his work shall be presented. This must be essential to any adequate protection, and any proper complete enjoyment of his property.

On the bill, as it now stands, there is a clear right to this injunction, upon giving the proper security. This is the only adequate remedy. As we now regard it, we hold the bill to be sufficient. What view we may take after argument, or on a showing upon any application to dissolve that may be made, I do not know. There is,

then, a right to this injunction, or to some equally adequate remedy; and the indemnity by giving bonds is plainly not an adequate remedy. Where the profits are under the control of, and depend upon, the acts performed and evidence furnished by the infringing party, there is likely to be a very poor compensation if this case should run on for some time. The profits are liable to be extremely small, so far as the complainants would be able to prove them. A bond for these profits, we are satisfied, would afford no reasonable remedy. The case, as we have seen, is not like that of a patent, where it makes no difference who makes the machine, provided the patentee gets his royalty. It is not like a copyright case, where the right and measure of compensation are fixed,—where the main elements by which the amount can be determined are known beforehand. In this case the amount is indeterminate, and depends altogether on the action of the party who wrongfully infringes the rights of the complainants,—who tortiously appropriates complainants' property.

In view of these considerations, I think the distinction between the cases of patents and copyrights, and this case, very broad. It is true, in one or two cases recently reported in the newspapers a similar order was made, but it was not made under similar circumstances. That order was made on the hearing of an application for the injunction, where the defendants came in and put in their proofs, and made a very strong case. Take the most prominent case, *Tracy* v. *Janisch*. The defendant put in her proofs fully by affidavits. It appears, according to the numerous affidavits, that defendant was a citizen and resident of Paris, and she alleges—and the proofs went far to show—that the work had been published in that city from year to year for some years, with the owner's knowledge and consent, and that the complainant's right had been consequently lost. A number of affidavits were put in to sustain the proposition. It was extremely doubtful whether the complainant had any rights at all. That was on the hearing of the application. If this was on the hearing, that case would have some application, and it would be proper to quote it. But there it was a case of extreme doubt whether the party was entitled to an injunction at all. If not, the hardship on defendant was peculiar and great. Her injury would have been irreparable had she been enjoined, and the court exercised its power, under the great hardship of the case, because the defendant had had the work prepared from what she maintained was a public work in Paris; had come to this country expressly to perform it; had organized her troupe; and had no other piece to perform. The failure to produce that piece would be the loss of her season, and the entire destruction of her enterprise. Under these circumstances and proofs it was extremely doubtful whether the injunction should be granted at all.

When this case comes to be heard on the answer, evidence, and proofs, the court may find occasion to change its order. It may be that there are some special circumstances to be developed which will

change the entire aspect of the case. But they are not yet developed, and on the case as it now stands there is a right to this injunction, or some other adequate remedy, and we know no other that would be adequate. A sufficient certified check having been offered before the order for dissolution was made, I now think the order dissolving the injunction upon the bond of defendants was made without due consideration of the inadequate remedy afforded, and the consequences to complainant. I therefore concur in the present order.

With reference to the hardship that may occur in this case, it is proper to observe that no general appearance has yet been entered by the defendants, unless the appearance to respond on the bill to the order to show cause can be held an appearance within the meaning of the statute. Whether or not it is, I am not prepared now to say. It was within 20 days of the rule-day when this suit was commenced, and the defendants had till the rule-day of the following month in which to appear. They had over 40 days within which to appear,—the rule-day in November being the day upon which they would be required to appear. They could, therefore, rest on their oars until that time, and not appear. Having formally entered their appearance, they would then have until the rule-day of the following month in which to answer or demur. They were bound, however, to appear to the order to show cause. They did appear, and the injunction was granted without a showing, other than on the bill, against it.

Suppose this injunction is dissolved, and defendants do not appear at all until the rule-day in November, and then take until the following rule-day, which they have the right to do,—because the law gives them that right,—in which to answer. They may then demur. In that event, the case will go upon the demurrer calendar of the next rule-day, and, under the press of business, it may be months before the demurrer can be decided or regularly reached. It might be over-ruled, and a plea put in, and several months more be consumed in disposing of that plea. Then, after at last filing an answer, there are three months in which the party is entitled to take testimony. Should this injunction be dissolved, the performance by defendants might run through a year or more, and everything there is worth having in this opera, so far as its performance on this coast is concerned, might be appropriated by the defendants, and at the end there be no profits by reason of the expenses, manipulation, low prices, or improper production by the wrong-doers.

We think it would be a great hardship on the complainants to allow the matter to stand in that position. These possibilities should be taken into consideration in determining the right of complainants to have the order complained of vacated. On further reflection we are satisfied that additional time should have been given to the complainants to produce other and sufficient sureties, or that the certified check should have been taken in lieu of them. These are our more mature convictions. If I made a mistake in advising my asso-

ciate on an imperfect knowledge at the time of all the facts of the case, and without due consideration of the consequences of the action of the court, I am desirous now to correct my error. With all the care I take, mistakes will sometimes occur. So far as my responsibility as to that order goes, I am prepared to remedy it now.

I desire, in connection with this matter, to make some other observations. There was manifestly a misapprehension on the part of counsel as to the practice of this court in a justification of sureties. It was insisted by counsel for defendants, yesterday, that they would have waived their right to object to the sureties had they come in with their affidavits and opposed this injunction, or had they moved, under the leave given in the order granting the injunction, to dissolve it. I think they are entirely mistaken. The two motions might have been made simultaneously, and gone on together, *pari passu.*

It was announced here that they were bound under the rules of the court to except in five days to the sureties, or there was a waiver. I stated at the time that I recollected no such rule. There is no such rule of this court. If there is, I have been unable to find it, either in the equity rules prescribed by the supreme court of the United States, or in the rules adopted by this court. Counsel seem to have been misled by the Code of Civil Procedure. They are entirely mistaken as to the practice of this court. Where counsel have not had an opportunity to be present at the approval of a bond by the clerk, when it has been ordered to be approved by him, upon a petition to the court, made promptly, or affidavits showing the sureties to be insufficient, and notice to the other side, I suppose the court has full authority, without regard to other proceeding, at any proper stage of the case, to require an additional bond to be given, as a condition of the continuance of an injunction. Upon the equity side of the court, at least, I have no doubt that it is within the authority of the court in this manner to require insufficient security to be made ample; it is only on the law side that the practice act of the state in such matters prevails. Doubtless the application should be promptly made, and an unreasonable delay would be regarded as a waiver of a right to object. But the matter would rest in the sound discretion of the court.

Again, after a bond is given, the sureties may become insolvent. I have no doubt of the authority of the court, upon a petition, stating the facts, and notice to the other side, to examine that matter, and if it is found that the sureties are insufficient, that additional sureties may be required. There must have been a misapprehension by the parties as to the practice on the equity side of this court in that particular.

HOFFMAN, J., (*concurring.*) I do not know whether I have a right to partake in this decision, or whether I form a part of the court. The circuit judge issued an order to show cause why an injunction

should not be granted. That order was returnable on a day fixed. It came up before me. Counsel were not ready. It was postponed by consent to a further day. On that day counsel again announced that they were not ready. Thereupon the injunction issued, no cause being shown against it, with leave to move to dissolve at any time. The order was on the condition that the complainants give security. They attempted to give security. I concur in all, and more than all, that my associates have said as to the insufficiency of the sureties offered. But the question is: Did the failure to offer that security forfeit the right to an injunction, and forfeit the rights of complainant, which he must be presumed to have, under the allegations of the bill? I think it did not. When he offered to remedy his previous neglect by depositing a certified check or money, the court obtained all it originally asked for, and the injunction should have gone, and been continued, subject always to the right of the other party to move to dissolve it. On this motion to review the action of the court it appears to me that the question whether the injunction ought to be dissolved or not, upon a proper application and hearing, has no relevancy. I do not pretend to have considered this matter as thoroughly as my associates have done. The bill in this case, it seems to me, is like a bill to restrain a person from destroying heir-looms or publishing family letters, where, if the thing is done, the injury is irremediable. It is easy to see that an accounting for profits would not afford any indemnity. It is the right of an owner of a piece of literary property to be protected. His pride as an author must be considered. He has the right to choose his own licensee. His play might be played for months, not at a profit, but a loss. In the mean-time, not only will the market be spoiled for a subsequent production by the owner of the opera in this town, but the reputation of the opera injured. It appears to me it is a case for an injunction. But that is not the point on which I base my concurrence in the ruling of the court. I think that, on a review of the order dissolving the injunction, the question is, not whether the injunction should originally have gone, or should now be continued, but whether, under the circumstances, it ought to have been dissolved.

There is no absolute forfeiture of the right to an injunction because complainants have failed, under the circumstances, to comply with the order of the court requiring them to give security. If the opposite side are advised that the injunction ought to be dissolved, let them move to dissolve on notice to complainants.