[Civ. No. 33968.   Second Dist., Div. Five.   July 1, 1969.]

ALPINE PALM SPRINGS SALES, INC., et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; GREEN TREES ENTERPRISES, INC., Real Party in Interest.

524

Thurman Arnold, Jr., for Petitioners.

No appearance for Respondent.

Morris Lavine and W. S. Mayock for Real Party in Interest.

REPPY, J.—Petitioners, in combination, will be designated as "the Alpine group"; and individually, as "Alpine Estates," "Alpine Sales," "Mr. Sparks" and "Mrs. Sparks." Real party in interest will be referred to as Green Trees.

### FACTUAL AND PROCEDURAL BACKGROUND:

More complete factual and procedural background details than we will set out here can be gleaned from an examination of the previous major appellate considerations cited hereinafter.

On June 1, 1962, Alpine Estates sold two units of land near Palm Springs to Green Trees on two promissory notes secured by two deeds of trust. When Green Trees failed to make payments Alpine Estates commenced foreclosure proceedings. Shortly before the foreclosure sale set for April 12, 1963, Green Trees filed an action against the Alpine group asserting, among other things, that they had been guilty of fraudulent representations concerning the value of part of the property.

On May 5, 1964, judgment was entered in the principal action. In effect, it invalidated one of the promissory notes by one-half its amount ($825,000 reduced to $412,000, less $50,000 down payment, left $362,000 due on the note), and awarded $100,000 punitive damages to Green Trees against Alpine Estates. In addition it provided that the terms of a preliminary injunction should remain in force for a period of 90 days from date of entry of judgment. We see this provision as a final injunction limited as to its period of effective duration. By obvious inadvertence, the verb "enjoined" was omitted from the text of the preliminary injunction.[1]

The injunction provision was based on the thoughts of the trial judge that in the event Alpine, upon the judgment becoming final, proceeded with foreclosure, Green Trees would forfeit the property; "that a continuation of restraint against

---

[1] A contention that the final injunction is defective because the preliminary injunction was granted on the condition that Green Trees be ready for trial at a specified time and was not, has no merit.

foreclosure . . . for 90 days after entry of judgment . . . is a reasonable time to prevent [the Alpine group] from profiting by their own wrong and to allow [Green Trees] an opportunity to pay the balance of the purchase price as fixed herein.''

The Alpine group appealed the main portion of the judgment (the reduction of the promissory note and the award of punitive damages) but not the final injunction. Evidently the Alpine group considered the scope and purpose of the final injunction appropriate if the main portion of the judgment was to be sustained.

After the rendition of the judgment of May 5, 1964, which included the final injunction, the Alpine group set a foreclosure sale for August 5, 1964, two days after the 90-day injunction period was to run out. Thereupon, Green Trees, on July 24, 1964, filed a petition with the Court of Appeal seeking a stay of the foreclosure sale and an extension of the duration of the final injunction. This petition was denied on July 28, 1964. (Case No. 2d Civ. 28534.)

However, when Green Trees returned to the superior court level, the trial judge, on August 3, 1964, pursuant to a noticed motion, issued an order modifying the final injunction by extending its duration 90 days.

On August 25, 1964, the Alpine group petitioned the Court of Appeal for a writ of mandate or prohibition with respect to the extension. (Case No. 2d Civ. 28635.) The petition was denied without opinion on the 30th day of September, 1964. A request to the Supreme Court to hear the matter was denied.

On October 26, 1964, Green Trees petitioned the superior court for a further extension of the final injunction. The hearing was set for November 2, 1964. When the motion came on, the trial court continued the hearing date to November 4, 1964, and ordered the injunction extended to that date.

On November 4, 1964, the trial judge modified the final injunction by extending it to and including January 8, 1965. Alpine appealed this order. The three appeals were consolidated and originally came before the Court of Appeal.

There followed a series of orders by the superior court, the intention of which was to further extend the duration of the final injunction for various periods of time. A few of these will be analyzed specifically in this opinion since some of the contentions of the Alpine group relate to them.

On December 10, 1964, Alpine filed with the Court of Appeal a petition for a writ of mandate to set aside the

injunction extension order of November 4, 1964, or for a writ of prohibition to preclude further extension orders, the petition being based on the contention that the superior court had lost jurisdiction by reason of the appeals. This petition was denied in an unpublished opinion dated April 12, 1965 (Case No. 2d. Civ. 28968).

On September 28, 1966, an order was made extending the final injunction to November 4, 1966. This is mentioned here explicitly because it was by this order that the injunction was extended over the period of time when it is alleged that the Alpine group committed the claimed contemptuous act of conducting a foreclosure sale.

On September 28, 1966, the Court of Appeal reversed the main portion of the judgment (reduction of promissory note and award of punitive damages) and directed the trial court to dissolve the final injunction. (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* (Cal.App.) 53 Cal.Rptr. 805.) On October 31, 1966, three days after the lapse of the 30 days when the decision of the Court of Appeal became final in that court, Alpine Estates caused a foreclosure sale to be carried out and Alpine Estates bought in the properties which had been sold to Green Trees. Foreclosure deeds were issued to Alpine Estates and were recorded on October 31, 1966. At this time Green Trees had not yet made application to the Supreme Court for a hearing, its time to do so not having expired.

On November 3, 1966, Green Trees filed chapter XI bankruptcy proceedings in the United States District Court, Central District of California, case No. 2852. Both parties indicate that the bankruptcy court has made successive orders restraining the Alpine group from conducting any other foreclosure proceedings or from carrying out any actions which would further interfere with Green Trees' title.

On November 7, 1966, Green Trees petitioned the Supreme Court for a hearing with respect to the appeal, and on November 23, 1966, the Supreme Court granted a hearing.

On December 28, 1966, Green Trees filed a complaint in the Superior Court of Los Angeles County in mandamus seeking a judgment which would bring about the reconveyance of the property which had been the subject of the foreclosure sale to it. (Case No. 900,496.) A demurrer was interposed on the ground that the complaint failed to state a cause of action. This demurrer was sustained with leave to amend on April 11,

1967. Apparently no amended complaint was filed thereafter within the time allotted.

On March 1, 1967, the bankruptcy court authorized Green Trees to file an action in the superior court to set aside the foreclosure sale[2] and to institute contempt proceedings against the Alpine group.

On April 20, 1967, pursuant to moving papers filed by Green Trees, the superior court issued the first of three orders to show cause in re contempt dealing with the foreclosure sale. This order to show cause was heard April 28, 1967. On May 18, 1967, the superior court found the Alpine group to be in contempt and made orders of the type which are under review in the present proceeding. On May 29, 1967, the Alpine group filed a petition for writs of certiorari and prohibition directed to the Supreme Court, since that court then had the appeals under consideration. It turned out that this was very close to the time when the Supreme Court was going to render its decision on the appeals. It did so on May 29, 1967. (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.*, 66 Cal.2d 782 [59 Cal.Rptr. 141, 427 P.2d 805].) The Supreme Court overturned the decision of the Court of Appeal and affirmed the May 5, 1964, judgment of the superior court. It also affirmed the orders of August 3, 1964, and November 4, 1964, extending the duration of the final injunction. On June 21, 1967, the Supreme Court denied a petition for rehearing.[3] On the same day the Supreme Court transferred the petition for writ of prohibition to the Court of Appeal which granted a writ of certiorari to review the order of May 18, 1967.

On July 10, 1967, the matter was heard and argued, and on November 14, 1967, the contempt order was annulled because the document supporting the order to show cause had not been properly sworn to. (*Palm Springs Alpine Estates, Inc.* v. *Superior Court*, 255 Cal.App.2d 883 [63 Cal.Rptr. 618] ; petition by Green Trees (real party in interest) for a hearing by the Supreme Court was denied January 11, 1968.)

On March 1, 1968, the superior court issued a second order to show cause in re contempt based upon moving papers submitted to it. On May 1, 1968, the superior court found the Alpine group in contempt again. The contempt order was sim-

---

[2]The first aspect of this authorizing order suggests that the demurrer to the mandamus action may have been sustained in part on the basis that such permission of the bankruptcy court had not been obtained. Apparently no such suit has been filed.

[3]This is recited at the close of the opinion. (66 Cal.2d 782 at page 789.)

ilar to the one previously issued and to the one under review. Again, the Alpine group petitioned the Court of Appeal for writs of certiorari and prohibition (Case No. 2d Civ. 33367). A writ of review was issued and a hearing was set for August 23, 1968. However, on August 22, 1968, the superior court, on its own motion, evidently because of its own feeling that a full and fair hearing had not been provided, vacated the contempt order. On August 23, 1968, the appellate court dismissed the proceeding.

## PRESENT PROCEEDINGS:

On August 26, 1968, Gladys Towles Root (hereinafter, Mrs. Root) as an officer of Green Trees, executed a declaration in support of an application for the third order to show cause in re contempt. It alleged, among other things, that the final injunction had been extended to November 4, 1966;[4] that the Court of Appeal in its reversal of the judgment of May 5, 1964, had directed the superior court to dissolve the injunction, and that the Supreme Court's decision had made that direction a nullity; that on November 1, 1966, she had had calls from the attorney for the Alpine group and from Mr. Sparks wherein they suggested settlement but did not reveal any facts about the foreclosure sale; that she learned of this event for the first time on November 4, 1966; that Mr. and Mrs. Sparks, as president and secretary of Alpine Estates, had substituted the trustee on the deeds of trust and caused the new trustee to conduct the foreclosure sale; that this was done to frustrate the entire judgment and deprive Green Trees of the benefits thereof; that on November 9, 1966, counsel for the Alpine group had told her that Alpine Estates had gotten the property back when the Court of Appeal had dissolved the injunction and now could do what it wanted with it. Mrs. Root further alleged, on information and belief, that Mr. Sparks had tried to get the original trustee (Security Title Insurance Company) to conduct a foreclosure sale; that an officer of that company had told him that this was enjoined and that Mr. Sparks had said that he didn't care about the injunction, that the Court of Appeal had dissolved it; that

---

[4]In their points the Alpine group have mentioned possible irregularities in the area of notice of motions for and the making of injunction extension orders. With the exception of one motion made and granted ex parte, discussed *supra,* we feel that the circumstances do not militate against the validity of the orders. Although there appears to be some lack of adherence to good legal standards, we see no prejudice resulting.

Mr. Sparks had made assertions that anyone dealing with Green Trees would be sued, and that this had discouraged purchasers. It was alleged that this willful violation of the extended final injunction called for the imposition of both civil and criminal sanctions pursuant to section 1212 Code of Civil Procedure and for judicial action aimed at the protection and preservation of the judgment. The declaration contained a prayer that the persons charged show cause why each should not be held in contempt and punished and why each should not be ordered to retransfer the property to Green. Trees and to refrain from any interference with Green Trees for a period of one year and ten months thereafter; that if Mr. Sparks refused to retransfer the property, the court appoint its clerk to do it for the court.

On August 30, 1968, the superior court issued its order addressed to the Alpine group requiring their appearance[5] on September 17, 1968, and directing them to show cause why each should not be adjudicated in contempt and punished for disobeying the extended final injunction; why each should not be incarcerated in jail until the restoration of the status quo of the transaction; why a receiver should not be appointed to carry out the orders of the court in the event the Alpine group refused to do so; and why the clerk should not be the transfer agent. In addition the order to show cause recited the facts it was based on which substantially were those set out in the declaration of Mrs. Root.[6]

On September 17, 1968, the order to show cause hearing was continued to September 25, 1968.

On September 19, 1968, the Alpine group filed an answer to Mrs. Root's declaration denying each and all of its allegations and alleging that the purported contumacious act had been done more than a year prior to the initiation of the proceedings so that the proceedings were barred by sections 340, subdivision 1 and 340, subdivision 2, Code of Civil Procedure; that the order to show cause was invalid for seeking remedies not authorized by statute (§ 1218, Code Civ. Proc.) ;[7] that

_____

[5]The court also issued a notice of order to show cause and a citation to the Alpine group with reference to the hearing scheduled for September 17, 1968.

[6]Originally, in the viewpoint of the Alpine group, there was a problem about the service of the order to show cause and citation but their counsel determined to forego pressing it and made an appearance on behalf of his clients.

[7]Viewing the plan of the trial judge to bring about a record reconveyance of title to Green Trees as a form of punishment. It is not; it is

the court had no jurisdiction due to the finality of the decision of the Supreme Court in the underlying case;[8] that the contempt proceedings were barred by the pendency of the superior court mandamus action (900,496);[9] that the Alpine group had been placed in double jeopardy by reason of the vacated second contempt adjudication; that the parties had entered into a stipulation to permit the sale of the property on which Green Trees had reneged.[8] The Alpine group also filed a motion to dismiss the order to show cause on the same grounds.

On September 24, 1968, Mrs. Root executed and filed a supplementing affidavit alleging that Alpine Estates on August 23, 1968, executed and recorded an instrument deeding the property to a corporation designated as Trans-World Enterprises, Inc.; that this was in violation of the final injunction and of an order of the bankruptcy court restraining the Alpine group from interfering with the title to the property. The affidavit contained a prayer that the Alpine group be adjudged in contempt and ordered to transfer title from Trans-World to Green Trees. No order to show cause is included in the record as having been issued pursuant to this charge of a second contempt.[10]

The order to show cause issued August 30, 1968, eventually was heard on October 23, 1968. In addition to its consideration of the declarations, the trial court heard oral testimony including that of Mrs. Root. On October 31, 1968, the trial judge indicated how he was ruling and directed counsel for Green Trees to prepare an order for execution by the court. Counsel prepared findings of fact, conclusions of law and an order. These were executed on November 21, 1968, and filed on November 22, 1968.

The court found that the judgment of May 5, 1964, and the first two extension orders had been affirmed by the Supreme Court; that the final injunction had been further extended to November 4, 1966; that the foreclosure sale had been conducted with a design to frustrate the judgment and was a fraud on the court and void; that the Alpine group had no

corrective; the decision of the Supreme Court made the foreclosure sale abortive.

[8] These contentions are not pressed before us.

[9] See footnote 21.

[10] The effect of this transaction will be avoided by the clerk (as hereinafter approved) making the retransfer deed on behalf of the court on a *nunc pro tunc* basis.

right to the title to the property and that the continuation of the title in the name of Alpine Estates was a contempt. The trial court concluded that the Alpine group were in wilful contempt for disobeying the final injunction particularly by their acts of conducting the foreclosure sale and having title recorded in the name of Alpine Estates; that title continued to be vested in Green Trees and that the recordation jeopardizing Green Trees' title was in contempt of the court; that the Alpine group (should be) ordered to revest title in Green Trees so as to have the record speak truthfully that title was and is in Green Trees; and that this action was "necessary to preserve the status quo of the judgment of the court and prevent further frustration thereof."[11]

The order adjudges that Mr. and Mrs. Sparks, Alpine Sales and Alpine Estates, and each of them, are guilty of contempt of court for wilfully disobeying the final injunction; that "[*Mr. Sparks*] *as president of* [*Alpine Estates*] . . . substituted [another] trustee under the two deeds of trust . . . and . . . caused the property to be sold by said substitute trustee to [Alpine Estates]" (italics added);[12] that the title of Green Trees in the property is and shall be as it was immediately prior to October 31, 1966 (the date of foreclosure sale); "that title . . . must be restored to [Green Trees] as it existed immediately prior to that date"; that the Alpine group shall take all necessary steps to restore title to Green Trees and shall refrain from further interference with the status quo of the title to the property (specifying no time limit); that in the event the Alpine group fail to carry out the above orders within 30 days, the clerk of the court is empowered and instructed to act in their stead.

On November 22, 1968, the Alpine group executed and on November 27, 1968, filed the petition for writ of certiorari and writ of prohibition, now being considered. It alleged, among other things the following: (1) the history of the transactions and the lawsuit resulting in the judgment of May 5, 1964; (2) the finding of the trial judge which supported the injunc-

[11]As can be seen from an examination of them, both the findings and conclusions are a mixture of each. As far as the material in each amount to findings, since it is clear that the trial judge believed Mrs. Root, it must be said that there is substantial evidence to support them.

[12]An inconsistency exists here. In the second part of the order only Alpine Estates and Mr. Sparks are said to have caused the sale to take place. If any punishment were to be imposed, in light of a rule of strict construction, it could be imposed only against them. An officer of a corporation is punishable. (17 C.J.S. § 34, Contempt, pp. 94-95.)

tive part of the judgment; the extensions of the injunction by the superior court and the bankruptcy court restraining order; the default of the promissory notes, the first deed of trust and taxes; the reversal of the judgment of May 5, 1964, by the Court of Appeal, its reinstatement by the Supreme Court and the intervening foreclosure sale; the issuance of the first contempt order and its annulment by the Court of Appeal; the issuance of the second contempt order and its vacation by the superior court. The petition summarized the contents of the third contempt order. It then set out the following contentions: (1) that there was no evidence to support the adjudication of contempt;[13] (2) that there was no injunctive order, or that it had expired, or that the orders (for the final injunction and its extension) were unclear;[14] (3) that the right to adjudicate a contempt was barred by the statute of limitations; (4) that the order to show cause and hearing thereon had put the Alpine group in double jeopardy; (5) that ordering the Alpine group to retransfer title to the property (i.e., to undo the effects of their contemptuous act) was beyond the jurisdiction of the court because it was a form of punishment not prescribed by sections 1218 and 1219, Code of Civil Procedure;[15] (6) that because of noncompliance with directions contained in the contempt order the superior court would direct the clerk to carry it out which would bring the property within the jurisdiction of the bankruptcy court; and (7) that unless prohibited the superior court would issue successive adjudications of contempt. The petition then prayed that a writ of certiorari issue which would call up the record and set a hearing; that the order of contempt be adjudged void and annulled; that it be adjudged that the superior court should desist from further proceedings in the matters to be reviewed; and that a writ of prohibition issue restraining the superior court from enforcing the final injunction and from taking any further action to hold Alpine Estates and its agents in contempt.

On February 4, 1968, we granted certiorari and restrained

---

[13]See footnote 11.

[14]It is urged that the injunction lacked definiteness because it was framed by reference to the preliminary injunction and because its existence at the critical time depended on non-uniformly worded extensions. The stress placed on definiteness by the cases is generally applied to punishment situations. There would not be the same call for precision when the action being taken by the court is curative and not punitive.

[15]See footnote 7.

the superior court from enforcing the "judgment of contempt" made on November 21, 1968.

Green Trees filed opposition to the petition for writ of prohibition, reciting its version of the pre-occurring events, averring that the second prior contempt order was vacated in order to provide a fuller hearing which had been done, and urging that the Alpine group's present attack is only a further effort to frustrate the original judgment and that, therefore, sanctions should be imposed.

### CONSIDERATION OF THE CONTENTIONS:

██ The contention of the Alpine group that there never was any injunction is based on the circumstance that the verb "enjoined" was inadvertently omitted from the text of the preliminary injunction. It appears that all concerned were not aware of this omission. It evidently was not detected in the several journeys of the case to the appellate level. It was even quoted, sans the verb, in one of the opinions. If this was the circumstance as far as the Alpine group were concerned, they were never prejudiced; they were always under the impression that the injunction was complete until the defect was discovered in connection with this proceeding. If this was not the situation, then the Alpine group should be estopped from raising the technicality at this time. They cannot hold back their knowledge and spring it at a time they believe the most crucial. Also fully dispositive of this contention is the point that the validity of the final injunction is implicit in the Supreme Court's approval of the first two orders extending it.

██ The Alpine group urges that the final injunction expired at one time or another before the foreclosure sale took place. The first occasion they mention is at the end of the first extension. It is correct that the 90 days ended with November 1, 1964; however, that was a Sunday. The time for hearing the motion to re-extend was continued to November 2, 1964, the next court day thereafter, at which time the second extension was ordered. This kept the continuity of the injunction intact. Moreover, the affirmance of the order of extension by the Supreme Court implicitly established its validity against such an attack. Also the unpublished opinion issued April 12, 1965, sanctioned the extensions through November 4, 1964. Finally, on September 1, 1965, there was a stipulation that the effect of the November 4, 1964, order (it was inadvertently set out as 1965, an obvious mutual error which was later cor-

rected *nunc pro tunc*) was extended to October 1, 1965. This would cure any defects up to then.

The next questionable point of time was December 1, 1965. It is urged that the order made on that date was only for a hearing continuance and did not include an extension of the final injunction. The declaration supporting the order outlined circumstances indicating that prospective buyers from Green Trees had run into some delay problems and more time was needed.[16] The minute order was entitled "[Green Trees'] motion to extend order of November 4, 1964." That order included an extension of the final injunction. The body of the order reads in part, "[Green Trees'] motion for a further continuance is argued and granted over [the Alpine group's] objections." The record is sufficiently clear to show an extension of the injunction as well as a continuance for a further hearing.

April 1, 1966, is the last date to which the Alpine group seriously point as an occasion when a break in the chain of extensions occurred. The record shows a written motion for an "ex parte" order for an extension of the injunction and the signed indorsement of the judge that the motion is granted. Counsel for the Alpine group asserts in his points (but not by sworn statement) that they did not receive a copy of this document.[17] No affidavit of mailing has been included in the record. The Alpine group urge that they were precluded from contesting this extension. However, they did not at any time submit to the superior court any evidence to counter this showing made by Green Trees and move it to set aside this order.[18] Moreover, the Alpine group admit that they received notice of an extension order made June 30, 1966, extending the injunction to September 28, 1966. This certainly alerted them (or should have alerted them) to the fact that there had been an intervening order. An inspection of the record would have disclosed the ex parte order of April 1, 1966. By the failure of the Alpine group to earlier attack this particular extension order, Green Trees was deprived of the opportunity (if in fact the order was invalid because of its ex parte nature, and the injunction, therefore, had expired) of moving to rein-

---

[16]Although Mrs. Root got confused and prayed that the judgment be further stayed, no one could have been misled considering the history of extensions and the manner in which the order was framed.

[17]Apparently counsel obtained one later on his own.

[18]And, of course, none has been presented to us.

state the injunction under the authorities cited by the Alpine group (43 C.J.S. Injunctions, 1002; *Goldmark* v. *Kreling*, 25 F. 349). Under the circumstances the Alpine group is estopped from urging this point. Moreover, the opportunity was available to the Alpine group to include this problem of the ex parte order among the matters considered by the Supreme Court by appealing from the extension order as soon as they obtained knowledge of it and having it consolidated with the two other appeals related to extensions of the injunction. Also, it could have been included in the petition for writ of prohibition filed May 29, 1967, which the Supreme Court assigned to the Court of Appeal. The Alpine group not having pursued either course has waived the possible irregularity.

At oral argument the Alpine group made the additional contention that, conceding the original final injunction was valid and properly extended by the superior court orders, nonetheless it was not operative when the foreclosure sale took place because it had been made non-operative by the decision of the Court of Appeal reversing the judgment of May 5, 1964. It is true that the Alpine group waited until after the decision was final as far as the Court of Appeal was concerned before causing the sale to take place; but the case was not yet final as to the rights of the parties because most of the 30-day period within which the Supreme Court could take over had yet to run; the remittitur had not gone down; and the injunction was to be dissolved by the superior court at the direction of the Court of Appeal. It was still in effect and, of course, was further sustained by the decision of the Supreme Court. (*People* v. *Walker*, 76 Cal.App. 192, 200-201 [244 P. 94].) [19]

The Alpine group contend that Green Trees was barred from pressing and the trial court from entertaining and ruling upon the contempt charge against the Alpine group by the statute of limitations embodied in section 801 of the Penal Code or in either of sections 340, subdivision 1 and 340, subdivision 2 of the Code of Civil Procedure. To properly consider this claim, it is necessary to focus attention on the dual aspect of the proceeding instituted by Green Trees. One purpose was to have the Alpine group punished for having

[19] Even if the decision of the Court of Appeal had the effect as between the parties of positioning them as if no superior court judgment had been rendered, it would mean that the *preliminary* injunction was revitalized. If not, the sale during the period of non-restraint could not survive the impact of the Supreme Court decision which certainly would apply retroactively so as to void the abortive foreclosure sale.

committed an act in contempt of the superior court's order, and the other purpose was to cure the continuing effect of the contemptuous act. The concept of punishment applies to the contemptuous act (the foreclosure sale) and not to its continuing effect (the misplacement or clouding of title to the property). Although this effect could have been cured by a retransfer of title to Green Trees and this was not done by the Alpine group at any time after it was known by them that the contempt was being charged, this nonaction cannot be said to have cut off the continuing effect of the foreclosure and to have started a limitations period running which otherwise would not have done so. (The situation might be different if we were now considering a claimed contempt by the Alpine group of the superior court's order to reconvey and that order had been made without the alternative of the clerk performing the act.)

Since the trial court's ruling was that the Alpine group had wilfully disobeyed the court's order, this could place the contempt in the misdemeanor (criminal) category. However, the trial judge made no such conclusion. Thus it is more appropriate to classify it as a civil contempt (perhaps with quasi criminal overtones) and to apply the limitations statutes set out in the Code of Civil Procedure. In any event the period is one year. In this regard, it is noted that the trial judge at the time of making its adjudication, chose to impose no punishment.[20] Rather he, in effect, gave the Alpine group the opportunity to purge themselves of contempt by executing the reconveyance deed. However, conceivably the judge had in mind electing to impose punishment if the Alpine group failed to reconvey, leaving the act to be performed by the clerk. Thus it is still essential for us to rule on the limitations issue. We hold that the statute has run as against the punishment phase of the proceeding. We do not feel however that any statute of limitations has run against the judicial step of curing the continuously operating effect of the contemptuous act. This ruling is particularly warranted since the foreclosure sale obviously has resulted in a persisting obstruction to the reselling or refinancing of the property.

■ The Alpine group further urge that the second contempt adjudication and its *sua sponte* vacation by the supe-

---

[20] Although the Alpine group suggest that the action of the superior court in causing retransfer of title by the Alpine group or the clerk constitutes punishment, we do not see it this way. It is simply curing the unwarranted effect brought about by the contemptuous act.

rior court put them once in jeopardy and that the third adjudication had the effect of subjecting them to double jeopardy. We agree insofar as the punishment phase is concerned on the basis that either a criminal or quasi criminal act is involved. (17 C.J.S. Contempt, § 60, p. 136.) However, even though the trial judge previously ordered retransfer of the property and this order fell within the vacation of the adjudication, since that pronouncement of the court is not to be considered as punishment, the jeopardy rule should not be applied to that aspect.

Finally, the Alpine group assert that the superior court did not have inherent power to undo the effect of the contumacious act involved in this case through a proceeding of the type and by the means adopted which are here under review. They say that since the title to real property is involved it is necessary that an independent action be brought to obtain a full-fledged judgment mandating the retransfer of title, such as the action already filed, but let lapse by failure to amend after demurrer, by Green Trees. In fact, they assert that said suit is another action pending which bars the action of the court under review.[21] No direct precedent has been cited to us, and we find none. However, we conclude that where a court has issued a prohibitory injunction and it has been violated and the effect of the violation can be cured by a further direction to the contemner to perform that curative act, such an order can validly be made. Since the power to punish for contempt is inherent (all authorities agree on this; see 17 C.J.S., Contempt, § 43, pp. 106-116) surely the power to cure the unwarranted effects of a contumacious act is also. It has been held that "[a person] may be required to destroy that which he created in violation of the order." (17 Am.Jur. 2d, Contempt, § 110, p. 95; see also *H. J. Heinz Co.* v. *Superior Court*, 42 Cal.2d 164 [266 P.2d 5].) Where contemner in violation of an injunction sent out proxy-seeking letters containing misstatements, a proper method for dealing with this was to have contemner mail out a correction in a form approved by the court. (17 Am.Jur.2d, Contempt, § 111, p. 96, citing *Securities & Exchange Com.* v. *Okin* (2nd Cir. 1943)

---

[21] Although it is true that a judgment of dismissal has not been issued in the mandamus action in the superior court, this is a step up to the demurring party (the Alpine group) to secure, and they are in no position to urge another action pending because they have failed to do so. Also, the existence of other remedies does not diminish the power of a court to punish or cure the effect of a contempt. (17 C.J.S., Contempt, § 59, p. 134.)

137 F.2d 862 [148 A.L.R. 1019].) We feel that this remedial type of action can properly be applied to a real property title situation.

There is also the suggestion that the decision of the Supreme Court adjudged the invalidity of the foreclosure sale and had the effect of revesting title in Green Trees and that if Green Trees desired further adjudication of this circumstance, it should bring an action to quiet title. At oral argument counsel for Green Trees voiced the viewpoint that the Supreme Court decision was "self executing," meaning, we take it, that record title in Green Trees might be satisfactorily brought about by the recordation of an abstract of the superior court judgment and of the Supreme Court decision affirming it. This would render moot the second phase of the contempt proceeding and make any ruling as to it unnecessary. However we are not convinced that this is a practical solution and would have the clarity and strength in the chain of title as would a retransfer deed executed by Alpine Estates or by the clerk acting for the superior court. Therefore, we feel this was an appropriate alternative open to the court and could be achieved through a proceeding of the nature instituted by Green Trees. The availability of a quiet title action does not preempt this remedy.[22]

### DISPOSITION :

Our order restraining enforcement of the contempt order of November 21, 1968, is dissolved. The prayer of the Alpine group that the contempt order be annulled is denied. The prayer of the Alpine group for a writ prohibiting the respondent court from enforcing its final injunction is denied. However that court shall follow the directions hereinafter given with respect to setting a period of time for its duration, and the portion of the contempt order directing the Alpine group to refrain from further interference with the judgment and with "the status quo of title to said property" shall be coexistent with the final injunction and shall terminate with any termination of the final injunction. The prayer of the Alpine group for a writ prohibiting the respondent court from taking any further action to hold the Alpine group in contempt for violating the final injunction is denied insofar as it relates to any actions other than the foreclosure sale conducted October 31, 1966. The fact that that act was a con-

[22]See footnote 21.

tempt is what was adjudicated by the respondent court, which adjudication, in effect, is affirmed by this ruling. However, the respondent court is prohibited from punishing any of the Alpine group for the contumacious act of causing the foreclosure sale to take place.

Since the prayer for annulment of the contempt order is denied, the clerk shall now carry out the instructions of the respondent court to take all necessary steps to restore record title to the property to Green Trees. The deed may be executed by the clerk on a *nunc pro tunc* basis. There is no need to afford Alpine Estates the time to do this itself.

Green Trees is awarded its costs.

With respect to setting an extension of the period of time for duration of the injunction, the following is noted. The trial court's original finding was that, absent interference by the Alpine group, 90 days was a reasonable time to allow Green Trees to work out refinancing to pay off the new balance so as to fairly benefit from the judgment which it had won. The modifications by way of extensions were justified because of the interference of the Alpine group, as explained by the Supreme Court, or because it was necessary to keep the restraint in effect while appellate review of the validity of an extension order was pending. The revesting of record title in Green Trees by the clerk's deed under the sanction of this decision will put the situation back as it was when the judgment was rendered, wiping out any possible lingering interference effect of the foreclosure sale. The court should conduct a hearing in proper cooperation with the federal court conducting the chapter XI proceedings to enable the determination to be made as to what, under present economic conditions, is a reasonable period of time for what should be the last extension of the final injunction, bearing in mind the purpose of the original limited time injunction and that 90 days was considered adequate to meet that purpose absent the interference and obstruction which transpired. An order then should be made extending the final injunction for the period determined upon. The additional injunction against interference by the Alpine group with the efforts of Green Trees to refinance or sell within the period selected shall remain a part of the order.

There remains consideration of the question of whether the superior court can punish any of the Alpine group for not obeying the order to retransfer the property to Green Trees,

but instead petitioning this court for a writ. The answer is no, because the superior court order provided for the alternative of the clerk's action.

Green Trees asked that sanctions be imposed against the Alpine group. The situation does not warrant that drastic action.

Kaus, P. J., and Aiso, J., concurred.

A petition for a rehearing was denied July 31, 1969, and petitioners' application for a hearing by the Supreme Court was denied August 27, 1969.