[L. A. Nos. 28012, 28359, 28527. In Bank. May 29, 1967.]

GREEN TREES ENTERPRISES, INC., Plaintiff and Appellant, v. PALM SPRINGS ALPINE ESTATES, INC., Defendant and Appellant.

Musick, Peeler & Garrett, Richard D. Dear, Bruce E. Clark and Carl O. Kowol for Defendant and Appellant.

Morris Lavine, W. S. Mayock, Gladys Towles Root, Norman E. Stolba and Eugene McPherson for Plaintiff and Appellant.

McCOMB, J.—Defendant Palm Springs Alpine Estates, Inc., appeals from (1) certain portions of a judgment of the superior court entered herein on May 5, 1964, (2) an order entered on August 3, 1964, and (3) an order entered on November 4, 1964; and the three appeals have been consolidated. Plaintiff has filed a cross-appeal from the judgment.

*Facts*: Plaintiff, the buyer of a large tract of land (consisting of a three-parcel subdivision, containing 750 one-acre lots, and 23,000 acres of undeveloped land), sued for damages allegedly resulting from misrepresentations made by, or on behalf of, defendant Palm Springs Alpine Estates, Inc., the seller.

The judgment cut the purchase price of the subdivision in half, granted an injunction against foreclosure of trust deeds on the subdivision and on the undeveloped property, and awarded $100,000 punitive damages and costs to plaintiff. The injunctive provisions run against not only defendant Palm Springs Alpine Estates, Inc., but other defendants who have not appealed.

The subdivision was sold for $825,000, comprised of $50,000 cash and a note for $775,000, secured by a first deed of trust on the property. The $50,000 down payment was made, but no payments were made on the promissory note.

The trial court found that defendants had made fraudulent misrepresentations about the subdivision, adversely affecting the value, and that the actual value of the subdivision was only half the amount which plaintiff had promised to pay.

Therefore, the trial court reduced the amount of the trust deed obligation, $775,000, by one half the purchase price, $412,500, leaving an outstanding trust deed obligation of $362,500.

The undeveloped acreage was sold for $1,575,000, comprised of $50,000 cash, assumption of an existing first deed of trust of $1,035,000, and a note for $490,000, secured by a second trust deed.

The trial court found that no misrepresentation affected the value of the undeveloped property and therefore made no adjustment in the purchase price of this property. Only the original $50,000 was paid on this property, and no payments have ever been made on the promissory note or on the first trust deed.

The trial court's judgment enjoined defendants from foreclosing the trust deeds on both the subdivision and the undeveloped acreage.

*Questions*: First. *Was there substantial evidence to support the findings of the trial court?*

■ *Yes.* When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. (*Brewer* v. *Simpson,* 53 Cal.2d 567, 583 [1, 2] [349 P.2d 289]; *Primm* v. *Primm,* 46 Cal.2d 690, 693 [1] [299 P.2d 231].)

■ When two or more inferences can reasonably be de-

duced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. (*Brewer* v. *Simpson, supra,* 53 Cal.2d 567, 583 [1, 2]; *Primm* v. *Primm, supra,* 46 Cal.2d 690, 694 [2].)

 Applying the foregoing rules to the facts in the present case, the record discloses that the trial court found, supported by the evidence, that defendants had made fraudulent misrepresentations about the subdivision that had adversely affected its value, and that the actual value of the subdivision was only half the amount which plaintiff had promised to pay.

Plaintiff charged that defendants misrepresented the physical development of the subdivision, to wit, conditions respecting water, roads, and utilities.

The trial court found that defendant Samuel Pierce Sparks, as president and controlling stockholder of defendant Palm Springs Alpine Estates, Inc., represented ''That defendants had water wells and water rights adequate to support the Parcel I residential and multiple-residential and commercial subdivision which water wells and rights would pass to Plaintiff, on payment of the full purchase price for said Parcels.''

Likewise, the trial court found the representations to be false, because ''The water available within Parcel I was and is not sufficient to support the community plan as represented to Plaintiff by Defendants.''

Plaintiff presented evidence that defendants represented that there was plenty of water and that they were going to form a company to put in a water line system from Palm Springs and distribute water to the whole area, and were going to form a utility company for water, electricity, and telephone for not only the 750 acres but a nucleus for the 23,000 acres, and that these representations were in fact false.

On the issue of roads, the trier of fact found that defendant Samuel Pierce Sparks represented that all roads in Parcel I would be completed by defendant Palm Springs Alpine Estates, Inc. (apparently by, or shortly after, the close of escrow) and that this was a false representation.

Likewise, the trial court found that defendant Samuel Pierce Sparks represented ''That Defendants had arranged for supplying Parcel I, with utilities, as follows: water, electric lights and power, natural gas and telephone service,'' but that ''Utilities have not been brought to Parcel I or II by Defendants, nor have they contracted for them with utility

companies. Defendant Samuel Pierce Sparks . . . has had no intention of contracting with utility companies, to supply Parcel I or II with water or electric lights and power or natural gas,'' and the trier of fact found that this was fraud, as it was a promise made without any intention to perform it.

The trial court also found that defendant Samuel Pierce Sparks had represented to plaintiff ''that Parcel I was a 'going business' subdivision which plaintiff could step into with continuity in profitable sales,'' and that this representation was false and was relied upon by plaintiff.

The evidence presented, viewed most favorably to plaintiff, would permit the conclusion that defendants were guilty of the tort of deceit, that is, that defendants intended to, and did, induce plaintiff to buy the property by making promises which they did not intend to perform, and that plaintiff was justified in relying upon such promises and believed that they would be performed. (Civ. Code, §§ 1710, subd. 4, 1572, subd. 4; *Chelini* v. *Nieri*, 32 Cal.2d 480, 487 [5] [196 P.2d 915]; *Union Flower Market, Ltd.* v. *Southern Cal. Flower Market, Inc.*, 10 Cal.2d 671, 676 [8] [76 P.2d 503].)

The evidence presented was sufficient to establish the elements of fraud and misrepresentation. The record contains much testimony as to the false material representations which were made by defendants with knowledge that they were false and with the intent that plaintiff rely on these misrepresentations in the purchase of the property.

There is evidence in the record which shows that plaintiff did in fact rely on these false representations, to its detriment, and suffered damage as a result.

█ The misrepresentation of even a single material fact upon which plaintiff had a right to, and did, rely will support the judgment. (*Stewart* v. *Crowley*, 213 Cal. 694, 700 [4] [3 P.2d 562]; *Harris* v. *Miller*, 196 Cal. 8, 16 [4] [235 P. 981]; *Ramey* v. *General Petroleum Corp.*, 173 Cal.App.2d 386, 399 [10] [343 P.2d 787].)

The trier of fact, who heard the witnesses and saw them testify, found that the representations were false. The trier of fact personally contacted the witnesses at the trial, observed their conduct and demeanor while testifying, and judged the character of their testimony. He was in a far better position to pass upon the truthfulness of plaintiff's testimony than are the members of an appellate court. (Cf. *Werner* v. *State Bar*, 13 Cal.2d 666, 676 [4] [91 P.2d 881].)

■ A trier of fact may accept such witnesses as he wishes and reject others, and an appellate court may consider only whether there is substantial evidence to support his findings, not whether it feels in the reading of the cold record that it would disagree. (*People* v. *Bates,* 126 Cal.App.2d 144, 145 [2-4] [271 P.2d 968]; *People* v. *Smith,* 134 Cal.App.2d 417 [1, 2] [285 P.2d 671].)

A further discussion of the evidence would serve no useful purpose.

■ Second. *Should plaintiff's cross-appeal be dismissed on the ground that its notice of appeal was not timely?*

*Yes.* The notice of appeal was filed two days after the running of the statutory period.

Timely filing of a notice of appeal is a jurisdictional matter. (*Vibert* v. *Berger,* 64 Cal.2d 65, 67 [2] [48 Cal.Rptr. 886, 410 P.2d 390]; *Estate of Hanley,* 23 Cal.2d 120, 122 [3] [142 P.2d 423, 149 A.L.R. 1250].)

■ Third. *Did the trial court have jurisdiction to enter the orders made by it August 3, 1964, and November 4, 1964, extending the injunction which restrained defendants from foreclosing their deeds of trust?*

*Yes.* The judgment hereinabove referred to was made and entered May 5, 1964. An appeal was taken, however, only from those portions cutting the purchase price of the subdivision in half and awarding punitive damages and court costs to plaintiff.

Since no appeal was taken from the portion of the judgment prohibiting defendants from foreclosing their trust deeds,[1] the appeal did not stay proceedings in the court below, under section 946 of the Code of Civil Procedure, with respect to that portion of the judgment. (*Dow* v. *Superior Court,* 140 Cal.App.2d 399, 405 [4], 411 [297 P.2d 30] [hearing denied by Supreme Court].)

Therefore, the trial court, at any time before the injunctive portion of the judgment became final on July 6, 1964, could unquestionably have modified those provisions.

The trial court took no action, however, until August 3,

[1]The judgment provided: "The terms of the preliminary injunction dated and filed May 17, 1963, shall remain in full force and effect for a period of ninety (90) days from the date of entry of Judgment by this Court." No appeal was taken from the order granting the preliminary injunction in May 1963.

1964, at which time it entered an order purportedly extending the injunction for an additional period of 90 days.

The trial judge, in granting the order of August 3, 1964, indicated that he was doing so on the authority of *Sontag Chain Stores Co.* v. *Superior Court,* 18 Cal.2d 92 [113 P.2d 689], and *Union Interchange, Inc.* v. *Savage,* 52 Cal.2d 601 [342 P.2d 249], on the ground of a change in alleged factual circumstances, plaintiff having presented evidence that defendants had been interfering with its efforts to sell or refinance the property.

In the *Union Interchange* case, we said, at page 604 [1]: "In *Sontag Chain Stores Co.* v. *Superior Court,* 18 Cal. 2d 92 [113 P.2d 689] . . . we held that a trial court has inherent power to modify or vacate a permanent preventive injunction upon a showing that 'there has been a change in the controlling facts upon which the injunction rested, or the law has been changed, modified or extended, or where there the ends of justice would be served by modification.' (18 Cal. 2d at 95.) We recognized in that case that although 'it is the long established policy of the law to . . . accord finality to judgments,' the trial courts must be given power to modify or dissolve preventive injunctions issued by them. This power is necessary because a preventive injunction is fundamentally different from any other judgment or decree: it 'is in essence of an executory or continuing nature, creating no right but merely assuming to protect a right from unlawful and injurious interference.' ''[2]

Although in the *Sontag* and *Union Interchange* cases we were dealing with the question whether circumstances had so changed that an injunction was no longer necessary or desirable, it would appear that such factor should not be controlling, and that the same principle should apply where, as here, the question is whether the trial court has power to extend an injunction for an additional term in the interest of providing justice for all parties in interest.

---

[2]After reading the above excerpts from the *Union Interchange* case, the trial judge said: "The basis of my opinion is this case. It is an overall package. The reason for the 90 days was that the Court felt that that would be a fair time span to have everything straightened out one way or the other.

"Now, from the declarations and affidavits on file supporting this motion there has been a change . . . in alleged factual circumstances and so I think that I do have the power and I am going to sign this to continue this preliminary injunction for an additional 90 days.''

Accordingly, in view of the showing that defendants were interfering with plaintiff's efforts to sell or refinance the property and that a modification of the injunction would serve the interests of justice, the trial court had jurisdiction to enter the order of August 3, 1964.

An appeal was taken from the order of August 3, 1964, and the trial court thereafter, on November 4, 1964, made an order extending the injunction again, this time to January 8, 1965.

Although no changed circumstances were shown when the order of November 4, 1964, was made, evidence was presented that defendants had continued to interfere with plaintiff's efforts to sell or refinance the property. As a result, even though an appeal was pending from the previous order extending the injunction, the trial court had jurisdiction to enter the order of November 4, 1964, since under the circumstances it was shown that the ends of justice would be served by a modification.

The portions of the judgment appealed from and the orders of August 3, 1964, and November 4, 1964, are affirmed, and the cross-appeal is dismissed. The parties shall bear their own costs on appeal.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan J., concurred.

The petition of the defendant and appellant for a rehearing was denied June 21, 1967, and the judgment was modified to read as printed above.