80 Cal.App.3d 185 (1978)
145 Cal. Rptr. 451
Estate of LILYA SACCO REID, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant,
v.
BRIAN EUGENE TIVEL, Objector and Respondent; JOHN LYON REID, as Executor, etc., Defendant and Respondent.
Docket No. 16223.
Court of Appeals of California, Third District.
April 21, 1978.
*186 COUNSEL
Myron Siedorf, Robert G. Harvey and Eric Eisenlauer for Petitioner and Appellant.
Cooper, White & Cooper, Jeffrey F. Clark and J. Raymond Healy for Objector and Respondent.
Smith & Lucas and Harold J. Lucas for Defendant and Respondent.
OPINION
REYNOSO, J.
(1) The State Controller appeals from a corrected order fixing inheritance tax after objection. The court found that Brian Eugene Tivel, objector below, is, in equity, the duly adopted son of decedent, Lilya Sacco Reid. As such, he is entitled to treatment as a Class A transferee as defined in Revenue and Taxation Code section 13307.[1] The Controller contends that Brian is a Class C transferee (stranger) as defined in section 13309 because he was not an adopted child within the meaning of section 13310. Brian, according to the Controller, did not otherwise qualify as either a Class A transferee or as a Class B transferee as defined in section 13308. If the Controller's contentions are correct, Brian's inheritance tax liability (fixed at $43,446.62 as a Class A transferee) would be increased by the additional sum of $45,689.02.
*187 Decedent died testate survived by her husband, John Lyon Reid, executor of her estate, and by Brian, identified in her will as her adopted son. Specific bequests of approximately $18,000 were made to her husband, and the residue of her estate was placed in trust. Under the terms of the trust her husband is to receive the net income during his lifetime and upon his death the corpus is to go outright to Brian. The appointed inheritance tax referee determined Brian to be a Class C transferee and computed Brian's inheritance tax obligation to be $89,135.64.
Brian filed a written objection to that report, contending that he was the adopted son of decedent and thus entitled to be taxed as a Class A transferee. The matter was submitted for determination by the court on the original report, Brian's objection thereto, a stipulation of facts, and on the written memoranda filed by the parties. Brian's position was sustained by the trial court.
We agree. An equitably adopted son must be taxed as a Class A transferee.

I
The parties have stipulated to the truth of the factual background which we relate:
Brian was born on May 12, 1939, the son of Carl and Anna Tivel. In 1959 and for approximately 10 years prior, Carl Tivel was employed as the Superintendent of Schools of the Larkspur School District in Marin County, California. At that time John Reid, decedent's husband, was an architect whose firm performed architectural services for the school district. As a result of such contact, John and Lilya Reid became acquainted with Carl Tivel and his son, Brian.
In September 1959, a tragic event occurred. Carl Tivel took his life and that of his wife, Anna, leaving Brian an orphan at the age of 20. Thereupon, Brian, at the request of John Reid, became employed in the Reid architectural firm.
By early 1960, a substantial bond of affection had developed between the Reids and Brian, leading the Reids to inquire of Brian if he would be receptive to the idea of their adopting him as their son. Brian responded affirmatively. To effectuate the adoption, the Reids and Brian, pursuant *188 to the advice of the Reids' now deceased attorney, executed an agreement of adoption dated April 10, 1960, prepared by the attorney. The agreement provided in part that: "JOHN LYON REID and LILYA SACCO REID hereby adopt BRIAN EUGENE TIVEL as their child and lawful heir for all purposes, and agree henceforth to treat said BRIAN EUGENE TIVEL as their lawful child and heir, and to care for, assume the custody of, feed, clothe, educate and maintain said BRIAN EUGENE TIVEL in all respects as though said BRIAN EUGENE TIVEL was the lawful issue of JOHN LYON REID and LILYA SACCO REID; and BRIAN EUGENE TIVEL consents to the adoption, and agrees to do and perform all things required of him as such child of JOHN LYON REID and LILYA SACCO REID."
Concurrently with the execution of the agreement, Brian and the Reids began to undertake their respective obligations. Three days after signing the adoption agreement, on April 13, 1960, Lilya Reid executed a new will referring to the adoption and Brian's ultimate participation in her estate. Brian moved into an apartment, rent free, in the building owned by the Reids and in which they also resided. Later, Brian occupied a separate residence for which the Reids paid the rent.
For the next 11 years, Brian and the Reids were in constant daily contact, while Brian began a career in church-related, and then commercial, art work. Brian ate many of his meals at the Reid home. Telephone calls were exchanged, trips and excursions were undertaken together, and family gatherings attended.
In 1971, 11 years after the adoption, John and Lilya Reid decided to retire and relocate in Red Bluff, California, near the family home of John Reid. John Reid had been an acute diabetic for some time prior to their retirement. They felt that Lilya Reid could not undertake his care alone. After family discussions between Brian and the Reids, they decided that Brian would accompany the Reids on their relocation in order to help in caring for John Reid. Brian assisted in the family move and thereafter resided in Red Bluff with the Reids. As a result of this move, Brian turned down an attractive promotion to the position of art director of the San Francisco advertising firm of Allen & Dorward, Inc., and left their employ.
Two years after the move, the decedent Lilya Reid contracted cancer of the esophagus, which later spread to other organs, including the lungs. She was diagnosed as terminal and rapidly became bedridden and *189 incapable of basic bodily functions. In addition, John Reid suffered increasingly from his advanced diabetes.
For more than a year prior to the decedent's death on June 2, 1974, Brian assumed sole responsibility for the constant daily care of his adoptive parents. His responsibilities toward Lilya Reid included preparation and tubular feeding of food and medicine at intervals requiring his awakening several times a night. Associated problems of infection arose and as her condition worsened, Brian was responsible for control and operation of the decedent's oxygen tent and a suction device to relieve accumulation and congestion in her mouth and throat.
Throughout the 14-year period from April 1960 to June 1974, there is evidence, in addition to the assumption of mutual obligations and undertaking of responsibilities, to indicate clearly a true parent-child relationship between Lilya Reid and Brian Tivel. At all times, publicly and privately, Brian was referred to by Lilya Reid as her son, and he consistently referred to her as mother. Brian was identified by the decedent as her adopted child in the instrument admitted to probate as her will. Lilya Reid had often indicated her intention to provide for Brian upon her death. In fact, such intention was manifested by her will.
It was at all times Brian's understanding that the April 10, 1960, agreement of adoption was legally binding and sufficient for all purposes in establishing him as the adopted son of decedent and her husband. From the date of the agreement until decedent's death, the Reids treated Brian as their son and he them as his parents in all respects.
The probate court found that Brian was, in equity, the adopted son of decedent. On the basis of this finding, the court further determined that the case of Estate of Radovich (1957) 48 Cal.2d 116 [308 P.2d 14], compelled the further conclusion that Brian was to be taxed as a Class A transferee rather than under Class C, a stranger to the blood.
On appeal the Controller does not challenge the court's finding that Brian was equitably adopted, but challenges only the court's interpretation of the applicable law under which it held itself compelled to accord Brian Class A status.
It is our opinion, based on Radovich and the cases which have followed it and carved exceptions into its rules, that absent a successful challenge to the finding of equitable adoption, the Controller's contention *190 on appeal cannot be sustained. The only material fact distinguishing this case from Radovich is that there the decedent died intestate and thus the equitably adopted son took as an heir, while here, the decedent died testate and Brian took under the will. To apply a contrary rule in this case because of that factor, would place a premium on intestacy, thus creating a conflict with established public policy favoring testacy. (53 Cal.Jur.2d, Wills, § 6, pp. 229-230; see In re Redfield (1897) 116 Cal. 637, 655 [48 P. 794].)

II
The Controller contends that Brian is not entitled to be treated as an adopted child, for purposes of inheritance tax computation, because he was never formally adopted in compliance with California law.
A Class A transferee is defined by section 13307 to include "(a) A transferee who is the husband, wife, lineal ancestor, or lineal issue of the decedent." The term "lineal issue" as used in that section, includes adopted children who come within the provisions of section 13310, which provides as follows:
"(a) In determining the classification of a transferee of any class for the purposes of this part, children adopted in conformity with the laws of this state while under the age of 18 years are deemed to be natural children of their adoptive parents and to be unrelated to any natural parent who has been replaced by the adoption.
"(b) Any person adopted when over the age of 18 years shall be deemed to retain his relationship to his natural parents and to be unrelated to his adoptive parents unless:
"(1) A period of five years has elapsed from the date of adoption; or
"(2) If the decedent was the stepparent of such person, the stepparent-stepchild relationship or the combination of the stepparent-stepchild relationship and the adoptive relationship existed for at least five years prior to the date of death.
"(c) Upon occurrence of either paragraph (1) or (2) of subdivision (b), such adopted person shall be deemed to be unrelated to any natural parent replaced by the adoptive parent and shall be deemed to be the natural child of the adoptive parent."
*191 The Controller takes the position that the word "adopted," as used throughout section 13310 refers only to statutory adoption, and does not include equitable adoption, the status here accorded Brian. Brian of course contends otherwise, pointing to the Radovich case itself, and to the later case of Estate of Rivolo (1961) 194 Cal. App.2d 773, 777 [15 Cal. Rptr. 268], wherein the court characterized as well settled the rule, "that equity will specifically enforce an oral contract to adopt or a contract of inheritance and that part performance will take the contract out of the statute of frauds. [Citations.]" (See also Estate of Grace (1948) 88 Cal. App.2d 956, 962-963 [200 P.2d 189].)
While the cases relied upon by the Controller describe the process of adoption as a statutory one, it is apparent even from those cases that the possibility of an "equitable adoption" is not foreclosed. For example, in Adoption of Parker (1948) 31 Cal.2d 608, at page 617 [191 P.2d 420], where the requirement of statutory compliance is stated, the court first noted that "the present state of the record [before it provided] no basis for the application of the doctrine of estoppel [to support the asserted adoption]." At issue in Parker was the validity of the appellant's mother's consent to the adoption of her illegitimate child, which consent the Supreme Court found to have been revoked before it became effective. Implicit in the Parker decision is the possibility that the adoption could have been held complete by application of estoppel, notwithstanding technical noncompliance with the statutory requirements. (See also, 6 Witkin, Summary of Cal. Law (8th ed. 1974), Parent and Child, § 179(c), p. 4690; Estate of Radovich, supra, 48 Cal.2d at pp. 130-131, and authorities cited therein.)
We have previously noted that the Controller does not challenge the sufficiency of the evidence detailing Brian's relationship with the Reids and the agreement executed by them to support the finding of an equitable adoption. Rather, he challenges only the effect of this finding on Brian's proper transferee status, claiming it cannot be used as a basis for classifying Brian as "lineal issue" of the decedent within the meaning of section 13307, as clarified by section 13310. The Supreme Court's decision in Estate of Radovich, supra, 48 Cal.2d 116, provides the connection between the concept of equitable adoption and transferee status necessary to support the decision of the trial court.
The facts in Estate of Radovich, supra, manifest an equitable adoption. There Jack Radovich died intestate, leaving blood relatives in Yugoslavia. Nineteen years prior to his death, he had entered into an agreement *192 with George's parents whereby (1) George was to live with him and he would consider George his son and (2) he would adopt George. Although George lived with him, changed his name to Radovich, and was acknowledged publicly as Radovich's son and heir, he was never formally adopted. The court concluded that George occupied the equitable status of an adopted son. Thus, he was entitled to distribution of Radovich's entire estate. Further, the court concluded that George, as an adopted child, was a Class A rather than a Class D transferee (stranger), and that he was entitled to the exemption and the tax rate applicable to Class A transferees.
On appeal to the Supreme Court the judgment was affirmed, the majority agreeing that the jurisdiction of the probate court is a jurisdiction in rem; that the tax imposed by the inheritance tax law is on the right to succeed to the property of the estate, not upon the property itself; and that since George succeeded to Radovich's estate only by reason of the adjudication of his status as an adopted son and heir, the Controller could not claim that George inherited as a stranger, notwithstanding the correctness of that adjudication. (Estate of Radovich, supra, 48 Cal.2d at pp. 120-122.) The court further noted that only an heir may inherit. In view of the probate decree George inherited as an adopted child which means he necessarily was a Class A transferee and could not consistently be classified as a Class D transferee. (48 Cal.2d at pp. 122-123.)
Rejected by the Supreme Court was the Controller's argument that he should not be bound by the probate court's adjudication of George's right to inherit since he could not appear in the heirship proceeding. (Prob. Code, § 1080 et seq.)
The lengthy dissent in Radovich agrees with the majority opinion insofar as it establishes the binding nature of the probate court's determination, but then insists that such result compels classification of the equitably adopted child as a stranger to the blood (then Class D transferee), because his adoption was "equitable" rather than pursuant to the statutory adoption procedures.[2]
In arguing that Radovich should not be interpreted as supporting the decision that Brian is entitled to status as a Class A transferee, the *193 Controller seizes on the following language in Radovich: "The conclusion of the trial court sitting in probate as to George's right to inherit as the adopted son of Jack may have been erroneous but it was an action in rem which is now final." (48 Cal.2d at p. 122.) The Controller quotes that language for the proposition that the court did not hold that one may attain Class A transferee status as the result of an equitable adoption but only that the Controller there was precluded from contesting the finding of heirship based on such status. However, if the Controller is correct in his interpretation of the above-quoted statement, then, as Justice Schauer points out in his dissent, the majority would have been compelled to have held Class A status unavailable to one who, by the binding decree of the probate court, was clearly identified as one whose adoption failed to comply with statutory standards. (Id., at p. 124.) The entire dissenting opinion is directed at demonstrating the very point which the Controller is seeking to make in the case before us. That point was rejected by the majority. Further, the court's statement of possible error in the probate court's decision refers only to the correctness of the evidentiary basis for the finding of equitable adoption. (See, e.g., Alexandrou v. Alexander (1974) 37 Cal. App.3d 306, 318-319 [112 Cal. Rptr. 307].)
As previously noted, a factual distinction exists between Radovich and the present case. There the equitably adopted child took by intestate succession as an "heir" and here Brian takes under decedent's will. That distinction can be given no material effect without conflicting significantly with the policy favoring testacy.
The judgment is affirmed.
Janes, Acting P.J., and Evans, J., concurred.
A petition for a rehearing was denied May 17, 1978, and appellant's petition for a hearing by the Supreme Court was denied June 15, 1978.
NOTES
[1] All statutory references herein are to the Revenue and Taxation Code, unless otherwise specified. The State Controller will be referred to as Controller.
[2] Cited in support of this conclusion are many of the cases cited to us by the Controller for the proposition that "adoption," within the meaning of the transferee section can only result from statutory compliance, not from any court-declared substitute therefore.