[Civ. No. 48009. First Dist., Div. One. Oct. 21, 1980.]

Estate of HELEN ALMA WILSON, Deceased.
KEITH C. WILSON, as Administrator, etc., Petitioner and Respondent, v.
ANNA AGNES VAN DETT et al., Contestants and Appellants.

244

COUNSEL

Campbell, Warburton, Britton, Fitzsimmons & Smith, Willard R. Campbell and Maxim N. Bach for Contestants and Appellants.

Bradford A. DaPont for Petitioner and Respondent.

OPINION

ELKINGTON, Acting P. J.—Following the intestate death of Helen Alma Wilson, respondent Keith C. Wilson (hereafter Keith) under the doctrine of "equitable adoption" was judicially declared entitled to succeed to her estate. A sister of decedent and a sister of her predeceased husband, who, among others, would otherwise have been entitled to inherit, have appealed from the judgment.

 The principal issues of the appeal may be stated as: (1) Is the doctrine of equitable adoption to be found in the law of California (see discussion generally, 2 C.J.S., Adoption of Persons, § 32, pp. 446-447), and (2) if so, was there substantial evidence supportive of its application in favor of Keith?

We conclude for the reasons we now state that the two questions. must be answered affirmatively.

It was said in *Estate of Grace* (1948) 88 Cal.App.2d 956 [200 P.2d 189]: "'[C]ourts, in their effort to protect and promote the welfare of the child, have given effect to a contract to adopt, where it has been fully performed on the part of the child, although it was invalid under the laws where it was made.'" (P. 963.) Citing out-of-state authority, the

court continued: "[R]elief in this character of cases 'is generally classified as specific performance of contract. There are analogies to that equitable remedy, but the classification is not accurate. A specific performance of a contract to adopt is impossible after the death of the parties who gave the promise. Equity was driven to the fiction that there had been an adoption.'" (*Id.*, pp. 964-965.) "The...difference between the cases upholding agreements to adopt and the one at bar is that in those cases the agreement to adopt or to bequeath property was made with the parents or other relative of the child, while here, the agreement was made only with the child. This fact might be important on the adoption feature of the agreement, but makes no difference on the agreement as to intestate succession. An agreement to adopt, not consented to by the parents, might not be enforceable in California, but an agreement to provide for inheritance by the child's heirs, made with the child, is enforceable. In this respect it makes no difference whether the agreement is with the child or with someone for its benefit. The agreement is *for the benefit of the child*, not of the parents or persons making it." (*Id.*, p. 966.)

Such an agreement was also deemed made with an orphaned child in *Estate of Rivolo* (1961) 194 Cal.App.2d 773 [15 Cal.Rptr. 268]. The child was raised and treated in all respects by the adult contracting parties as their natural child. Upon their death, intestate, the child was awarded their entire estate. Affirming the trial court, the reviewing court stated: "[I]t is well established that equity will specifically enforce an oral contract to adopt or a contract of inheritance and that part performance will take the contract out of the statute of frauds.... [¶] ...It is uncontroverted that the respondent was at all times regarded and treated as the adopted daughter of the Rivolos; that they told her and others on numerous occasions that she was legally adopted and would be their sole heir.... [¶] We think it is clear that the respondent changed her position in reliance on the agreement and completely and fully performed her duties as a daughter. Appellants' argument that there was no detriment to her ignores the fact that such agreements are primarily for the benefit of the child.... [W]e think...that under the circumstances, equity demands recognition of her lifelong status as an adopted child of Frank Rivolo and her inheritance rights...." (Pp. 777-778.)

Perhaps the best analysis of the rule is found, by way of dicta, in the high court's case of *Estate of Radovich* (1957) 48 Cal.2d 116 [308 P.2d 14]. There, a child's status as having been equitably adopted was

assumed by the entire court, which differed only on whether, upon succeeding to his putative parent's estate, he should be treated for inheritance tax purposes as a natural child or a stranger in blood. In his dissent, Justice Schauer discussed in detail the concept of equitable adoption of children, a point with which the majority had no disagreement. ■ Citing copious authority, he stated (pp. 130-131): "[U]nder the principle that equity will consider that done which ought to have been done, it is generally held that a contract by a person to adopt the child of another as his own, accompanied by a virtual, although not a statutory adoption, may be enforced upon the death of the obligor by adjudging the child entitled to a natural child's share in the property of an obligor dying intestate.... 'In upholding such a remedy, the courts do not hold that the child is entitled to the right of inheritance as an heir. They do not undertake to change the status of either party, but merely to enforce a contract which has been fully performed on one side.'...When the child takes property in such a case it is as a purchaser by virtue of the contract...and by way of damages or specific performance....The child does not become, in a legal sense, the child of the adopting parents except for the purpose of receiving title to their property....The child shares in the estate of the deceased foster parent *as though* his own child but not as such. In order to do justice and equity, as far as possible, to one who, though having filled the place of a natural born child, through inadvertence or fault has not been legally adopted, the court enforces a contract under which the child is entitled to property, declaring that as a consideration on the part of the foster parents a portion of their property will pass on their death to the child....And in such case, property recompense is generally measured in the amount fixed by the statutes of descent and distribution....But in the absence of statutory adoption, it cannot be held that by enforcing such a contract a legal adoption was effected..., or that the child became an heir, even where the contract provided for a right of inheritance...." What this uncontroverted portion of *Radovich*'s dissent lacks in precedential authority, it makes up by supportive citations and persuasiveness.

To the same effect see *Steed* v. *Imperial Airlines* (1974) 12 Cal.3d 115, 122-123 [115 Cal.Rptr. 329, 524 P.2d 801, 68 A.L.R.3d 1204]; *Bennett* v. *Forrest* (1944) 24 Cal.2d 485, 491 [150 P.2d 416]; *Estate of Reid* (1978) 80 Cal.App.3d 185, 191-193 [145 Cal.Rptr. 451]; *Johnson* v. *Superior Court* (1929) 102 Cal.App. 178, 182-183 [283 P. 331]; *Furman* v. *Craine* (1912) 18 Cal.App. 41, 45-47 [121 P. 1007]. We have found no contrary authority in this state.

It may properly be emphasized that the foregoing authorities concern only the right of an equitably adopted child to inherit by virtue of contract; they do not otherwise, nor do we, equate the rights of such an equitably adopted child with those of a legally, or statutorily, adopted child.

We have, of course, considered *Estate of Taggart* (1923) 190 Cal. 493 [213 P. 504, 27 A.L.R. 1360], which is heavily relied upon by appellants. But we note that in that case no contention of "equitable adoption" was made or decided, probably because the claimed adoptive parent had made a will leaving nothing to the child, a clear right of parents of natural, or adopted, children. The claim was of a *right to inherit* (as distinguished from a right of specific performance of a contract), which we have shown does not exist in an equitably adopted child. (See authority quoted, *ante.*) *Taggart* lends no aid to appellants' arguments.

Nor is the recently published (June 18, 1980) case of *Estate of Davis*, 107 Cal.App.3d 93 [165 Cal.Rptr. 543], found supportive of appellants' position. In *Davis*, unlike the case at bench (as we shall presently see), there was no evidence reasonably indicating an express, or implied, agreement to adopt.

We turn our consideration now to the question whether substantial evidence supported the superior court's findings that decedent and her predeceased husband "agreed to adopt Keith Wilson as their own child," and "raised" him "as their own child, each assuming unto the other mutual obligations and undertaking of responsibilities as parent and child," and that none of the parties ever "terminated the parent-child relationship which existed between them."

The concept of substantial evidence is explained by *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805], as follows: "When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact....[¶] When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court." And we determine from the *entire record* whether there is such substantial evidence, a procedure reasonably demanded by developing concepts of due process. (See *Jackson* v.

*Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 140 [93 Cal.Rptr. 234, 481 P.2d 242]; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].)

Some authority holds that the evidence in a case such as this shall be "clear and convincing. . . ." But that "is a question for the trial judge to decide"; the issue "is not open to review on appeal." (*Beeler* v. *American Trust Co.* (1944) 24 Cal.2d 1, 7 [147 P.2d 583].) Here, the trial court expressly found that the evidence supportive of its judgment was "clear and convincing. . . ."

Keith was born in 1942 at a home for unwed mothers. After several other foster home placements, at the age of three he was placed with Charles and Helen Alma Wilson who soon thereafter petitioned the superior court for his adoption.

The petition recited: "[Y]our petitioners are well able and anxious to care for, maintain and educate the said minor; and each of them is willing and anxious to adopt the said minor and to treat the said minor in all respects as if the said minor were the lawful child of each and both of them, and as such lawful child should be treated, and your petitioners are willing and anxious that the said minor when adopted should take the family name of each and both of them, and should sustain toward each and both of the petitioners the relation of child, and have all the rights and be subject to all the duties of that relation; and your petitioners, each and both of them, should sustain upon and after such adoption, toward the said minor, the relation of parent, and have all the rights [*sic*] be subject to all the duties of that relation; and your petitioners, each and both of them, agree to all and singular the matters and things set forth hereinabove and promise to the legal consequences of the same." But following an entry in the court's records—"Due to inability to obtain the consent of natural mother to the adoption after several attempts, abandonment petition is to be filed"—the adoption proceedings were dismissed.

Keith continued to live with his foster parents, the Wilsons. At age nine they told him he was adopted and never, until after their deaths, did he know otherwise. He used the name Wilson and was treated in all respects as their son; he had no contact with his natural mother. The relationship between the family members was warm and affectionate. When, in his teens, Keith ran afoul of the criminal, or juvenile, law the

Wilsons' apparent response was that of normal parents, disappointment and grief, and then forgiveness; there was no rejection. When Keith married, and he became the father of an adopted child, the Wilsons wrote a newsy message commencing "Dear Kids: Happiness forever with your new family. Things here are about the same, Mom is not too good. Still has lots of pain in her legs,..." It concluded with the thought, "there's just nothing sweeter than a darling baby girl! Love. Mom & Dad." And when Mr. Wilson died Keith and his wife moved from Iowa to California in order to take care of Mrs. Wilson, which they did for six or seven months until she also died.

The record, in our opinion, contains substantial evidence from which the trial court reasonably concluded that, according to the above-noted authority, the Wilsons and Keith had entered into a contract of adoption which was faithfully adhered to by them. It is of no consequence that believing other evidence, and drawing different inferences, the court might have reached a contrary conclusion. (See *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc., supra*, 66 Cal.2d 782, 784-785.)

No merit is seen in the contention that "the trial court erred in not applying the statute of frauds." Part performance of an oral contract to adopt a child "will take the contract out of the statute of frauds...." (*Estate of Rivolo, supra*, 194 Cal.App.2d 773, 777, and see authority there collected; see also *Estate of Reid, supra*, 80 Cal.App.3d 185, 191; *Estate of Grace, supra*, 88 Cal.App.2d 956, 962-963.)

No "fraud and concealment" is made out by Keith's erroneous recognition of appellants' rights to portions of the estate before he, himself, was fully advised. Nor have appellants pointed to any resulting prejudice therefrom; the trial court reasonably concluded that no prejudice ensued from the circumstances recited in an appellant's affidavit as: "When I initially applied to the bank for this loan and as security offered a mortgage on my property in West Deptford Township, the bank had turned me down and it was only after I offered as additional security to assign my interest in my sister's estate that I was successful in obtaining the loan." And the doctrine of "unclean hands" is to be applied, or not applied, in the trial court's sound discretion. (*Ferreira* v. *Ferreira* (1973) 9 Cal.3d 824, 835, fn. 10, 3d par. [109 Cal.Rptr. 80, 512 P.2d 304]; *Marlow* v. *Wene* (1966) 240 Cal.App.2d 670, 677 [49 Cal.Rptr. 881]; *In re Walker* (1964) 228 Cal.App.2d 217, 226-228 [39 Cal.Rptr. 243].) No abuse of that discretion is here observed.

It follows from what we have said that the judgment of the superior court must be affirmed.

Affirmed.

Newsom, J., and Grodin, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied December 17, 1980.