Filed 3/26/14  In re Haro CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re RANDOLPH HARO,<br><br>      on Habeas Corpus. | A137968<br><br>(Solano County<br>Super. Ct. No. FCR282399) |

The Department of Corrections and Rehabilitation (CDCR) has a demonstrated problem in its practice of classifying and segregating inmates by race.  After the United States Supreme Court held that the practice must satisfy strict scrutiny to pass constitutional muster (*Johnson v. California* (2005) 543 U.S. 499 (*Johnson*)), opponents of the practice began a series of lawsuits aimed at specific institutions.  In *In re Morales* (2013) 212 Cal.App.4th 1410 *(Morales),* Division Three of this District considered an order granting relief in habeas corpus to an inmate of Pelican Bay State Prison who challenged the institution's practice of what was characterized as granting "preferential treatment of inmates on the basis of ethnicity."[1]  (*Id*. at p. 1412.)  Division Three announced its decision as follows:  "The trial court here applied *Johnson* and found that 'there are more narrowly tailored means of controlling violence than to restrict entire ethnic groups.'  The court ordered the prison 'to refrain from affording preferential

---

[1] The *Morales* court described the preference as follows:  "Pelican Bay racially segregates prisoners and, during extended periods of perceived threatened violence, denies family visits, work assignments, yard exercise, religious services and other privileges to prisoners of one race while granting those same privileges to prisoners of other races."  (*Morales*, *supra*, 212 Cal.App.4th 1410, 1412.)

1

treatment to inmates on the basis of ethnicity' but the order permits prison officials to 'separate inmates on the basis of ethnicity, if prison security requires it, so long as it is not done preferentially' and is done '[o]n a short-term emergency basis. We affirm" (*Id.* at p. 1413, fn. omitted)

This appeal involves only that proviso.

Randolph Haro was a former inmate at Solano State Prison[2] who challenged that institution's alleged practice of race-related segregation during periods of "modified program," a form of lock-down.[3] After a three-day evidentiary hearing, the trial court concluded: "The 'modified program' classification system is clearly race-based and cannot survive a strict scrutiny analysis." On the basis of this conclusion, the trial court ordered as follows:

"(1) Respondent shall refrain from affording preferential treatment to inmates on the basis of ethnicity. Specifically, respondent shall not subject any inmate, including petitioner, to its 'modified program' or any other version of 'lockdown' based on that inmate's race or ethnic background alone. While respondent, in its discretion, may lockdown all or part of the prison, and may release inmates from lockdown based upon individual behavior and upon informed predictions of individual behavior, it may not do

---

[2] Haro was released on parole during the pendency of proceedings before the trial court. The trial court declined to hold Haro's claim as moot because "while on parole he remains subject to re-incarceration upon violation of parole and thus subjected once again to the modified program. . . . Thus, the possibility of him being locked down on questionable grounds is capable of recurring" and presents "an issue of great public import that transcends the interests of this particular petitioner." Neither the CDCR nor Haro appeals question this reasoning, and both accept that this appeal is not moot.

[3] The trial court's description of the program sounds very much like the one at issue in *Morales*: "In order to respond to disruptive or violent events in prison, respondent CDCR has developed what it calls a 'modified program.' This program involves the placement of certain inmates based on their 'classification' into a form of 'lock-down.' This results in a loss of certain privileges and limited mobility for a variable, unspecified period of time while prison officials investigate a disruptive or violent event in the prison. These restrictions include a loss of most privileges, including as cessation of visitation; loss of most phone and yard access; loss of medical appointments and religious services, and limited mail and library privileges."

so on the basis of ethnicity.  Specifically, any assumption about affiliation with, support of, or adherence to gang leadership used as a basis for imposition of a modified program must be based on the specific history, conduct and relationships of that inmate.

"(2)  Respondent shall no longer subject petitioner or any other inmate to any of the six classifications currently being utilized for its modified program or any other lockdown program and shall either eliminate any general classification system or otherwise recreate a classification system that is not race-based but instead relies on specific, objective factors pertaining to an inmate's history, conduct and associations.  At a minimum, any such classification system must:

"a.  Preclude an inmate's inclusion in a specific classification based on his ethnic or geographic background alone.

"b.  Preclude classification resulting in a lockdown or similar loss of privileges to inmates who have no history of conduct or associations that establish that the inmate would in fact adhere to the dictates of that classification leadership.

"c.  Preclude arbitrary classifications that unduly focus on certain ethnicities (i.e., Hispanics) while wholly ignoring others (i.e., Asians).

"d.  Omit classifications such as 'other' that do not in any meaningful manner affirmatively describe attributes of the inmate receiving such a classification.

"(3)  Within 120 days of the date of this order, respondent shall submit to the Court, in writing, a plan to implement this order.  If any classification scheme that in any way includes racial or ethnic criteria is present, respondent shall also justify in writing the inclusion of such criteria and submit references to all evidence on which it relied in justifying the use of this criteria."

CDCR appeals from that order, which is appealable.  (Pen. Code, § 1507.)  CDCR submits that "this appeal only concerns a matter of law—whether the superior court's order should be partially reversed because it prohibits Solano [state prison] from placing inmates in a race-based modified program under any circumstances."  What CDCR means is that it should not be categorically prohibited from considering an inmate's race in one particular situation—"a short-term emergency basis . . . when the modified

3

programs are narrowly tailored to the prison's compelling interest in protecting the safety of all inmates and staff and the security of the institution." A reading of CECR's briefs discloses that what it wants is the same type of temporary-use proviso allowed in *Morales*.

The validity of such an exception is beyond question: the *Morales* court deemed it "fully consistent with *Johnson* . . . , which recognized that '[t]he "necessities of prison security and discipline" ' may sometimes require race-based practices . . . ." (*Morales*, *supra*, 212 Cal.App.4th 1410, 1429, quoting *Johnson*, *supra*, 543 U.S. 499, 512.) The *Johnson* court expressly noted that "Strict scrutiny does not preclude the ability of prison officials to address the compelling interest in prison safety," as well as "Prisons are dangerous places, and the special circumstances they present may justify racial classifications in some contexts." (*Johnson*, *supra*, at pp. 514, 515.)

Haro argues that the trial court was not required to recognize such an exception, which in any event was not sought by CDCR before the trial court entered its final order. Haro then contends that "the uncontested findings of the superior court foreclose any exception to the bar on race-based lockdowns."

Haro's point about CDCR's inaction is entirely valid.[4] His other point, about there being no mandatory exception, may be questionable. (See *Hernandez v. Cate* (C.D. Cal. (2012) 918 F.Supp.2d 987, 1014 ["Prison officials . . . 'must "take reasonable measures to guarantee the safety of inmates[,]" ' " quoting *Farmer v. Brennan* (1994) 511 U.S. 825, 832].) It is only Haro's final point that is troubling.

We would not easily conclude that the superior court had made an order which unnecessarily impaired the ability of CDCR to maintain security and protect the safety of inmates and staff. We certainly would not want to deprive the Warden of Solano State Prison of the same measure allowed by the *Morales* court to the Warden of Pelican Bay State Prison. We are also mindful that the superior court's order, although final for

---

[4] To be fair, the *Morales* decision was filed on January 23, 2013, five days after the trial court entered the order under review.

4

purposes of Penal Code section 1507, was not intended to be the last word on the subject, and did not utterly preclude consideration of race or ethnicity, providing , as it does, that "If any classification scheme that in any way includes racial or ethnic criteria is present, respondent shall also justify in writing the inclusion of such criteria and submit references to all evidence on which it relied in justifying the use of this criteria."

The language of the order, specifically, that CDCR "shall refrain" from specified conduct is the language of injunctive relief, which can be granted in habeas corpus. (See *In re Lewis* (2009) 172 Cal.App.4th 13, 25 ["The challenged order is in the nature of an injunction as it directs [a state agency] to develop and implement a . . . program"]; *Faucette v. Dunbar* (1967) 253 Cal.App.2d 338, 340 ["an order . . . partakes of the nature of a preliminary injunction"].) A trial court's decision on a request for injunctive relief is reviewed for abuse of discretion. (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999; *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109.) And an injunction can always be modified. (Code Civ. Proc, § 533; *Green Trees Enterprises, Inc. v. Palm Springs Alpine Estates, Inc*. (1967) 66 Cal.2d 782, 788-789; *Union Interchange, Inc. v. Savage* (1959) 52 Cal.2d 601, 604-605.)

Our Supreme Court has repeatedly expressed its dislike of raising issues for the first time on appeal. More than a century ago, it held that "a judgment will not be reversed on appeal because of the failure of the lower court to give relief . . . which it was not asked to give, that is, in effect, an error which the trial court did not make." (*Buck v. Canty* (1912) 162 Cal. 226, 238.) Then, in 1978, it stated that "it would be wholly inappropriate to reverse a superior court's judgment for error it did not commit and that was never called to its attention." (*People v. Lilienthal* (1978) 22 Cal.3d 891, 896.) And of late, the court has become even more emphatic: "A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct." (*People v. Partida* (2005) 37 Cal.4th 428, 435; cf. *Helfand v. Southern Cal. Rapid Transit Dist* (1970) 2 Cal.3d 1, 17 ["In the absence of a proper attempt . . . to invoke the discretion of the trial court . . . , we certainly cannot say that the trial court abused its discretion."].)

In its briefs, CDCR does not spell out the precise language of the safety/security exception it seeks.  And even if we were to order a partial reversal, it would still be up to the trial court, with its greatly superior factual familiarity, to frame the language of the exception.  Thus, it is not only established appellate practice, but also a fitting respect for the trial court, which precludes granting CDCR's request for partial reversal.  However, that refusal is without prejudice to CDCR applying to the trial court for the insertion of appropriate additional language to its order.  Nothing in this opinion should be construed to indicate that we take any position on the merits of such an application.

The order is affirmed.

 

 

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Haerle, J.

A137968, *In re Haro*