[Civ. No. 19409.   First Dist., Div. Two.   Aug. 17, 1961.]

Estate of FRANK RIVOLO, Deceased. CHARLES A. PIZZORNO et al., Appellants, v. DOROTHY RIVOLO HERENDEEN, Respondent.

*Assigned by Chairman of Judicial Council.

774

Hardin, Fletcher, Cook & Hayes, Smith & Smith and Cyril Viadro for Appellants.

Langer & Simpson, Landels, Wiegel & Ripley and A. G. Goodrich for Respondent.

KAUFMAN, P. J.—This is an appeal from a judgment rendered on a jury verdict awarding the entire estate of

Frank Rivolo to the respondent, in a proceeding to determine heirship under section 1080 of the Probate Code. The question on appeal is whether the respondent, Dorothy Rivolo Herendeen, is entitled to the entire estate of Frank Rivolo as his equitably adopted daughter or only one-fifth of the estate as his niece. Appellants, who are the collateral heirs of the decedent and his predeceased spouse, concede that the respondent is entitled to one-fifth of the estate as the niece of Frank Rivolo, but argue that she is not entitled to the remaining four-fifths of the estate, as she was never formally adopted and has not proved her claim based on an oral contract of adoption. The contentions on appeal are that the respondent's cause of action was barred by the statute of frauds and that the trial court gave prejudicially erroneous instructions to the jury.

The appeal is on a settled statement which reveals the following facts: The respondent, hereafter referred to as Dorothy, was born in 1916; her father died in 1918, her mother in 1924, leaving her an orphan. After she spent a night or two with some neighbors, the decedent, Frank Rivolo, hereafter referred to as Frank, who was her father's brother, came and got her with his wife, Agnes. Frank and Agnes told Dorothy that she would live with them and be their little girl. She was very happy to have a home and someone to take care of her and told them so. A few weeks later, in the presence of her grandmother, they told her that they were going to adopt her. On two or three occasions, Dorothy went to the old courthouse on lower Broadway in Oakland; she did not know the exact nature of the proceedings but "just thought I was being adopted." A few months later, Frank and Agnes told her she was legally adopted and would be their sole heir. Frank and Agnes had no other children. On January 29, 1925, letters of guardianship for the respondent were taken out by Frank and Agnes. When Dorothy was about nine years old, Frank and his wife took her out of school one day to go to court. Afterward, Frank told the witness Gregg in front of Dorothy that she had been legally adopted that day and pointed to some papers as the adoption papers.

From 1924 until her marriage in 1934, the respondent lived with Frank and Agnes. They always referred to her as their "daughter" or "legally adopted daughter." This occurred on numerous occasions in front of relatives and others, as well as in writings on cards and letters. Frank often told Dorothy

as well as others, that she was his legally adopted daughter and that everything would go to her. Dorothy was always treated as a daughter by Frank and Agnes; she helped them in their retail meat business located below their home, by delivering orders to customers, taking care of the rabbits, etc.

.When Dorothy married Newton Herendeen on December 10, 1934, she had the full blessings of Frank and Agnes. After her marriage, Dorothy moved to Long Beach but wrote to Frank and Agnes every week; they also wrote to her with equal frequency until Agnes' death in 1948. Frank wrote to Dorothy as "my dear and only child." The family was an exceedingly close and loving one; many visits were exchanged after Dorothy's marriage. Frank called Dorothy's son, Frank Herendeen "Grandson" and introduced him as such, or as the son of his adopted daughter, Dorothy Herendeen. Frank's other relatives, although they lived in the vicinity, rarely visited him. Agnes' relatives did not live in California and never came for a visit, but corresponded occasionally.

When Agnes died on March 28, 1948, Frank probated her intestate estate. He told his attorney that Dorothy was their adopted daughter. The verified petition for letters of administration and the petition for distribution referred to Dorothy as the adopted daughter of Agnes Rivolo, and stated that Agnes left no other child or children.

When Frank was beaten and robbed in April 1956, Dorothy took him to her home in Long Beach and took care of him. At this time, Dorothy found two writings at the family home in Oakland, one signed by Agnes Rivolo referred to "our daughter, Mrs. A. N. Herendeen"; the other, also signed by Agnes Rivolo read: "At the death of Frank and Agnes Rivolo, all we own is to go to Mrs. Dorothy Rivolo Herendeen—Dorothy Herendeen. June 27, 1938." Frank died intestate on June 14, 1956, at a hospital in Long Beach. Until shortly before Frank's death when Dorothy discovered that there had been no formal adoption proceedings, she had never doubted that she was the adopted daughter of the Rivolos.

The first argument on appeal is that the trial court erred in deciding that the respondent's status was a question of fact. This matter arose on a petition to determine heirship, pursuant to section 1080 of the Probate Code. ▮▮ Section 1081 provides that a trial of the facts in such a petition *must be by jury* unless a jury is waived. In view of the mandatory language of this section, it has been held that it was error for a court to take the case from the jury and determine heir-

ship as a matter of law, where the case requires determination of one or more factual issues (*Estate of Torregano*, 54 Cal.2d 234, 243 [5 Cal.Rptr. 137, 352 P.2d 505]). Appellants contend that the trial court should have determined that they were entitled to four-fifths of the estate as a matter of law because the respondent's cause of action was barred by the statute of frauds (Civ. Code, § 1624; Code Civ. Proc., § 1973). They contend that since the 1905 and 1907 amendments to these sections, an agreement to make a will can be enforced only if such an agreement conforms to the requirement of the statute.

As it is well established that equity will specifically enforce an oral contract to adopt or a contract of inheritance and that part performance will take the contract out of the statute of frauds (*Estate of Radovich*, 48 Cal.2d 116 [308 P.2d 14]; *DeHermosillo* v. *Morales*, 146 Cal.App.2d 819, 827 [304 P.2d 854]; *Walker* v. *Galloway*, 99 Cal.App.2d 675 [222 P.2d 455]), the case was properly submitted to the jury for a determination as to whether there had been such part performance by the respondent as to take the admittedly oral agreement out of the statute.

While the burden of proof is on the respondent, the findings of the trier of fact cannot be disturbed on appeal if there is any evidence in the record to sustain them or any reasonable inference to be drawn therefrom to sustain them (*Estate of Cavner*, 165 Cal.App.2d 260 [331 P.2d 781]; *Estate of Walden*, 166 Cal. 446 [137 P. 35]). We think the record here establishes the existence of a contract of adoption and respondent's part performance thereof by clear, convincing and unequivocal evidence. It is uncontroverted that the respondent was at all times regarded and treated as the adopted daughter of the Rivolos; that they told her and others on numerous occasions that she was legally adopted and would be their sole heir.

Appellants argue that the respondent's part performance could not possibly take the contract of adoption out of the statute of frauds because she did not so change her position in reliance on the contract that a refusal to complete it would constitute a fraud upon her. They further contend that her acts were not unequivocally referable to the contract but admit of the explanation that they were done for love and affection.

We think it is clear that the respondent changed her position in reliance on the agreement and completely and fully performed her duties as a daughter. Appellants' argu-

ment that there was no detriment to her ignores the fact that such agreements are primarily for the benefit of the child (*Johnson* v. *Superior Court,* 102 Cal.App. 178 [283 P. 331]).

■    If the services are of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, and it is evident that the parties did not intend to measure them by any such standard, and if the plaintiff, after the performance of the services, could not be restored to the situation in which he was before the rendition of the services, *it is such a part performance of the verbal agreement as will remove the contract from the rule* [of the statute of frauds] (*Walker* v. *Calloway,* 99 Cal.App.2d 675 [222 P.2d 455]; *cf. Estate of Grace,* 88 Cal.App.2d 956, 962 [200 P.2d 189]). As the respondent's services were of this kind, we think this reasoning is extremely apt here as well as in conformity with the weight of authority (see cases in 27 A.L.R. 1325; 142 A.L.R. 84; 171 A.L.R. 1315), and that under the circumstances, equity demands recognition of her lifelong status as an adopted child of Frank Rivolo and her inheritance rights (*DeHermosillo* v. *Morales, supra,* pp. 819, 828; *Fowler* v. *Hansen,* 48 Cal.App.2d 518, 522 [120 P.2d 161]).

■    Finally, we can find no merit in the arguments relating to the allegedly erroneous and confusing instructions to the jury. The record indicates that the appellants proffered no instructions on the statute of frauds and did not avail themselves of the opportunity to criticize the proposed instructions or offer amendments.

Judgment affirmed.

Draper, J., and Shoemaker, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 11, 1961.