Gloria MINGO, Plaintiff-Appellant,

v.

Margaret M. HECKLER,* Secretary of
Health and Human Services,
Defendant-Appellee.

No. 83–2475.

United States Court of Appeals,
Ninth Circuit.

Submitted May 14, 1984.

Decided Oct. 16, 1984.

John V. Johnson, Cameron, Persons, Persons & Miller, Chico, Cal., for plaintiff-appellant.

Joseph Stein, Asst. Regional Atty., Dept. of Health & Human Services, San Francisco, Cal., for defendant-appellee.

Before CHOY, PREGERSON and REINHARDT, Circuit Judges.

PREGERSON, Circuit Judge:

Gloria Mingo appeals from a judgment of the United States District Court for the Northern District of California affirming the decision of the Secretary of Health, Education, and Welfare (the Secretary) [1] to deny Mingo social security benefits as the equitably adopted child of Jordan Cyrus. We reverse.

Mingo contends that the district court erred in deciding that she did not qualify

---

* We have substituted Secretary of Health and Human Services Heckler for former Secretary of Health, Education, and Welfare Patricia Roberts Harris. *See* Fed.R.App.P. 43(c)(1).

1. During the pendency of this action, the Administration redesignated the Department of Health, Education, and Welfare as the Department of Health and Human Services. *See* 45 Fed.Reg. 29,642 (1980).

for children's insurance benefits. Mingo's status as a "child" presents a question of California law.[2] The Secretary concedes that, under California law, an equitable adoptee is a child for benefit purposes. Therefore, the sole issue on appeal is whether, under California law, Cyrus had equitably adopted Mingo before he formally adopted her in November 1978.

## FACTS

The facts are not disputed. Gloria Mingo, age 25, is the natural daughter of Helen Todd. Todd's mother, Marie Ridgeway, lives with Jordan Cyrus as his common law wife. Cyrus and Ridgeway obtained custody of Mingo from Todd a month after Mingo's birth. Although she maintained contact with Mingo, Todd never tried to get her back. Cyrus and Ridgeway, on the other hand, always treated Mingo as their daughter. Cyrus supported Mingo and, to save enough money to send her to college, established joint bank accounts with her in 1968. Moreover, Mingo always treated Cyrus as her father and no evidence exists to indicate otherwise.

Cyrus, who has an eighth grade education, never saw the need to go through formal adoption proceedings, because he always considered Mingo his child. He did broach the subject of adoption with Todd on a number of occasions, including once in 1964 or 1965. Although Todd was always agreeable to having Mingo adopted, nothing "ever materialized." *Mingo v. Harris*, Civ. No. 80–0206–SW (N.D.Cal. Aug. 12, 1981) (order granting motion for summary judgment). Cyrus and Ridgeway neither formalized the agreement nor instituted formal adoption proceedings until Social Security personnel advised them to do so. Cyrus formally adopted Mingo in November 1978. Commencing on that date, the Secretary awarded benefits to her. Mingo, however, also claimed that, as Cyrus' equitably adopted child, she was entitled to benefits that had accrued before November 1978. She now appeals the district court's decision upholding the Secretary's denial of those benefits.

## STANDARD OF REVIEW

▆ The Court of Appeals may "set aside a denial of benefits only if the Secretary's findings are based upon *legal error* or are not supported by substantial evidence in the record as a whole." *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir.1984) (emphasis added). The case at bar presents only one issue: whether there was an agreement to adopt under California law. Because this is a legal issue, the substantial evidence test is inapplicable, and we review de novo the Secretary's determination of California law.[3]

---

**2.** "In determining whether an applicant is the child ... the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the state in which such insured individual is domiciled at the time such applicant filed application ...." 42 U.S.C.A. § 416(h)(2)(A) (West 1983).

The insured individual, Jordan Cyrus, was domiciled in California when he applied for social security benefits and claimed Gloria Mingo as his dependent.

**3.** We also apply the de novo standard to our review of the district court's interpretation of California law. *See Churchill v. F/V Fjord (In re McLinn)*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc) (holding de novo proper standard for reviewing all district court interpretations of state law).

The dissent suggests not only that we should review for substantial evidence, but also that California law requires this evidence to be "clear, cogent, and convincing" under *Estate of Bauer*, 111 Cal.App.3d 554, 561, 168 Cal.Rptr. 743, 746 (1980).

We disagree on both counts. As to the proper standard of review, we are convinced that both the administrative law judge and the district court operated under a misapprehension of California law. Because the material facts are undisputed, therefore, the question before us is a legal one, and we have a responsibility to set out the relevant principles correctly. *See Churchill*, 739 F.2d at 1398.

As to the proper quantum of evidence, we think the citation to *Estate of Bauer* is inapposite. In that case, which completely lacked the equities favoring adoption that we find in this case, the would-be equitable adoptee wanted to prove that he had been treated as a son by two people who had died. Because the decedents could not be present to give testimony that might contradict the claimant, the court imposed a heavier burden of proof on him. *See*

## DISCUSSION

Before finding an equitable adoption, a California court must find an agreement to adopt and "subsequent objective conduct indicating mutual recognition of an adoptive parent and child relationship to such an extent that in equity and good conscience an adoption should be deemed to have taken place." *Estate of Bauer,* 111 Cal.App.3d 554, 560, 168 Cal.Rptr. 743, 745 (1980). "[I]t makes no difference whether the agreement [to adopt] is with the child or with someone for its benefit ... [so long as] [t]he agreement is for the benefit of the child, not of the parents or persons making it." *Estate of Wilson,* 111 Cal.App.3d 242, 245, 168 Cal.Rptr. 533, 534 (1980) (citing *Estate of Grace,* 88 Cal.App.2d 956, 966, 200 P.2d 189, 195 (1948)).

We have the agreement to adopt here. The facts are undisputed that Cyrus and Todd discussed Mingo's adoption a number of times.[4] When Cyrus and Ridgeway again broached the subject of Mingo's adoption with Todd in 1964 or 1965, Todd consented and said that "it was more than right for them to go ahead and do it legally since they were [her] sole support ...." Their discussions obviously established an oral agreement of adoption. Therefore, the key issue on appeal is whether subsequent objective conduct demonstrates an adoptive parent and child relationship.

Mingo contends that there is sufficient subsequent objective conduct to demonstrate a mutual recognition of an adoptive parent and child relationship. We agree. California courts look for certain factors in deciding whether sufficient objective conduct exists. Three cases, *Estate of Radovich,* 48 Cal.2d 116, 308 P.2d 14 (1975), *Estate of Reid,* 80 Cal.App.3d 185, 145 Cal. Rptr. 451 (1978), and *In re Estate of Rivolo,* 194 Cal.App.2d 773, 15 Cal.Rptr. 268

(1961), delineate these factors, which include the facts that: the adoptee lived with the adoptive parent for a number of years; the adoptee assumed the adoptive parent's surname; the adoptive parent told the adoptee that he or she was adopted; the adoptive parent publicly acknowledged the adoptee as his or her child; the adoptee considered and conducted himself or herself as a natural child; the adoptee worked or performed services for the adoptive parent; and the adoptive parent attempted legally to adopt or obtained guardianship papers for the child. Because the factors are merely examples of the type of conduct demonstrating an adoptive parent and child relationship, the claimant need not demonstrate that she satisfies every factor.

In the case at bar, the facts indicate that Cyrus and Mingo maintained a conventional parent and child relationship. First, Cyrus obtained custody of Mingo a month after her birth and assumed complete responsibility for raising her. He provided for her total economic support; Todd's support was limited to occasional gifts. Second, Cyrus publicly acknowledged Mingo as his child. Mingo's friends at school regarded Cyrus as Mingo's father and would occasionally call Cyrus "Mr. Mingo" when he picked her up at school. Third, Mingo always regarded Cyrus as her father. Fourth, Cyrus' adoption inquiries demonstrated his intent to adopt Mingo.

The Secretary offers two main arguments to deny the existence of an adoptive parent and child relationship. First, the Secretary points out that Cyrus' application for social security benefits indicated "none" in response to a question about whether he had any children or other dependents. In filing his 1976 and 1977 tax returns, however, Cyrus did list Mingo as a dependent child. This discrepancy can be

---

*generally McCormick's Handbook of the Law of Evidence* 797–98 (E. Cleary 2d ed. 1972) (clear and convincing standard used in classes of cases "where there is thought to be special danger of deception"). In the instant proceeding, however, all relevant witnesses were alive and available to give testimony.

4. The record does not indicate the specific number of times Cyrus and Todd discussed Mingo's adoption. Both parties, however, stipulate that such conversations did take place.

explained. The record indicates that Cyrus neither filled out the social security benefits form himself nor read it before signing. Instead, he relied on Social Security personnel to complete the application accurately. The Social Security worker who helped Cyrus admitted that he had overlooked the possibility of Mingo's status as an equitable adoptee.

Second, the Secretary notes that Mingo failed to assume Cyrus' surname. This, too, can be explained. Cyrus said that he did not give Mingo his surname because he did not want Mingo to be "embarrassed later in life about her heritage." Apparently, Helen Todd was formerly married to I. Mingo, now deceased, and bore two children by him. Both children use the surname Mingo and maintain a sibling relationship with Gloria. Cyrus did not want Mingo to change her name to differ from that of her older siblings. The Secretary's arguments are therefore unpersuasive.

### CONCLUSION

Cyrus may have failed to complete the final step of legally adopting Mingo until November 1978. In all other respects, however, he maintained a conventional parent and child relationship with Mingo. We think that justice and equity requires the Secretary to recognize this relationship. *Estate of Bauer*, 111 Cal.App.3d at 561, 168 Cal.Rptr. at 746. Given the stipulated facts, we conclude that, under California law, Cyrus entered into an agreement to adopt Mingo, and that their subsequent conduct satisfied the requirements of an equitable adoption under California law.

Therefore, we REVERSE the judgment and direct the district court to hold further proceedings consistent with this opinion.

CHOY, Circuit Judge, dissenting:

The majority today completely disregards the substantial evidence standard of review enunciated by the Supreme Court in *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971),

and reviews this case de novo. The majority mistakenly assumes that, because the facts are undisputed, "this is a legal issue." The ALJ's decision, however, does not rest on an erroneous understanding of the applicable California law.

In this case, the resolution of this issue "requires an inquiry that is 'essentially factual.'" *See United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.1984) (en banc), *petition for cert. filed*, 52 U.S.L.W. 3875 (U.S. May 17, 1984) (No. 83–1884). Although the facts may be stipulated here, the inferences properly drawn from them are not. *See American Fidelity & Casualty Co. v. London & Edinburgh Insurance Co.*, 354 F.2d 214, 216 (4th Cir.1965). The inferences must be drawn from the words and conduct of Cyrus, Mingo and Todd over a period of many years. The factfinder, the ALJ, is in a much better position than we to make such inferences. As the Fourth Circuit Court of Appeals in *Charbonnages De France v. Smith*, 597 F.2d 406 (4th Cir.1979), has noted:

> [D]isputes about whether a contract has or has not been formed as the result of words and conduct over a period of time are quintessentially disputes about "states of mind," since they involve not only the subjective intentions had by the several parties but what "states of mind," what understandings, their manifestations of intention may have induced in others. These subjective states and objective manifestations of intention present interpretative issues traditionally understood to be for the trier of fact.

*Id.* at 414–15. The majority's application of a de novo standard of review is inappropriate because it requires this court to make inferences properly reserved for the factfinder, the ALJ.

California appellate courts have recognized the inappropriateness of de novo review and applied the substantial evidence standard of review in equitable adoption cases similar to this one. In *In Re Rivolo's Estate*, 194 Cal.App.2d 773, 15 Cal.Rptr.

268, 269–71 (1961), the appeal was also on a settled statement of facts. The appellate court affirmed the lower court's finding of an equitable adoption contract and held that the trial court properly submitted the issue to the jury. The appellate court noted that "the findings of the trier of fact cannot be disturbed on appeal if there is any evidence in the record to sustain them or any reasonable inference to be drawn therefrom to sustain them." *See also Estate of Wilson,* 11 Cal.App.3d 242, 249, 168 Cal.Rptr. 533, 537 (1980).

"Our sole inquiry is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge." *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982). Here, the evidence would allow a reasonable mind to accept the ALJ's conclusions. Mingo never assumed Cyrus' surname. Cyrus did not acknowledge Mingo as his child on a social security application. The record also indicates that Cyrus and Todd merely discussed the possibility of adopting Mingo but "nothing materialized" and they "never did get to it." Moreover, they last discussed the possibility of adoption many years ago in 1964 or 1965. That no further discussions took place between 1965 and 1978 could indicate that Cyrus did not consider adopting Mingo during this time period. A reasonable mind could have interpreted this evidence as proof that the appellant had not established, as required under California law, an equitable adoption contract "by clear, cogent and convincing evidence." *See Estate of Bauer,* 111 Cal.App.3d 554, 561, 168 Cal.Rptr. 743, 746 (1980).

I do not conclude that the majority's interpretation of the evidence, as it appears to us on the record, is unreasonable. But, "[w]here evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld." *Sample v. Schweiker,* 694 F.2d at 642. To apply de novo review to this case seriously oversteps the proper role of this court.